Jerry SHORT *v.* WESTARK COMMUNITY COLLEGE

01-753 65 S.W.3d 440

Supreme Court of Arkansas
Opinion delivered January 31, 2002

*Walters, Hamby & Verkamp*, by: *Michael Hamby*, for appellant.

*Smith, Maurras, Cohen, Redd & Horan, PLC*, by: *S. Walton Maurras*, for appellee.

JIM HANNAH, Justice. Appellant Jerry Short appeals the dismissal of his civil-rights case against Appellee Westark Community College (Westark) due to the Sebastian County Circuit Court's finding that Westark was immune from suit under sovereign immunity. Short filed suit in Logan County Circuit Court on January 1, 2001, against Westark claiming that Westark violated his civil rights by removing or failing to provide reasonable work accommodations for his physical disability of bilateral carpal tunnel syndrome. According to Short's complaint, Westark hired him on August 21, 1997, fully knowing of his disability, but after a year or two changed his job and removed certain accommodations, causing him to have to either attempt work outside of his restrictions or refuse to perform required work. Short alleged that on April 20, 2000, Westark terminated him because he was unwilling and unable to perform the work assigned to him. Short's complaint alleged a violation of the Arkansas Civil Rights Act for negligent or intentional acts of discrimination.

After being served with the summons and complaint, Westark filed a motion to dismiss the action, arguing that it is entitled to sovereign immunity because it is an arm of the State and is protected by both constitutional and statutory sovereign immunity. Westark argued that because the State provides the bulk of its financing and operating expenses, any judgment against the school would be tantamount to a judgment against the State. Westark offered the affidavit of Mark Horn, Vice President for Planning and Accountability at Westark, and attached graphs detailing the financial breakdown of income sources to the school. Furthermore, Westark noted that the venue of the lawsuit was improper in that the action should have been filed in Sebastian County Circuit Court, Fort Smith District, because the school is located in that district.

Short answered the motion to dismiss on March 9, 2001, arguing that the legislature waived sovereign immunity for Westark when it enacted the Arkansas Civil Rights Act. Furthermore, Short argued that Westark is similar to a local school district, and that the Arkansas Supreme Court has recognized that school districts are not entitled to sovereign immunity. Short also argued that statutory sovereign immunity does not apply because the legislature carved out an exception to such immunity. Finally, regarding venue, Short argued that although he believed venue was proper, he preferred the case to be transferred rather than be dismissed.

By letter filed April 2, 2001, the Logan County Circuit/Chancery Court transferred the case to Sebastian County Circuit Court, Fort Smith District, and the complaint was refiled on April 11, 2001. On April 24, 2001, Westark again filed a motion to dismiss prior to answering the complaint, and attached the same brief in support and supporting affidavit and documentation. Short filed the same response on May 10, 2001.

On May 16, 2001, the court issued its order granting Westark's motion to dismiss the complaint based on sovereign immunity. Specifically, the court found that the main issue is whether Westark is "an arm of the State," and, if so, whether the State treasury would be tapped by a judgment against Westark. The court reviewed statutes and constitutional provisions establishing the college and creating funding for its operation, and noted that the State provided from 69.94% to 73.77% of the funding to Westark from 1994 to 2000. The court also considered that the State retained substantial control over Westark's operations through the State Community College Board and the Arkansas Higher Education

Coordinating Board. As such, Westark is both financially and operationally dependent upon the State, and a judgment against Westark would have to be satisfied from the State treasury. Therefore, the court concluded that sovereign immunity exists. Short filed his notice of appeal on May 29, 2001.

 While the circuit court dismissed the case pursuant to a motion to dismiss, the court's action was actually one of summary judgment due to its consideration of Horn's affidavit and the attached financial documentation. Pursuant to Ark. R. Civ. P. 12(b) and (c), a motion to dismiss is converted to a motion for summary judgment when matters outside of the pleadings are presented to and not excluded by the court. *Francis v. Francis*, 343 Ark. 104, 31 S.W.3d 841 (2000); *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998); *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Because it is clear from the wording of the order that the trial court considered matters outside of the pleadings, we review this appeal as one from summary judgment.

 In reviewing a summary-judgment case, we need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Aka v. Jefferson Hospital Assoc.*, 344 Ark. 627, 42 S.W.3d 508 (2001). Notably, the moving party always bears the burden of sustaining a motion for summary judgment. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. However, the moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56 (2000); *Robert D. Holloway, Inc. v. Pine Ridge Add'n Resid. Prop. Owners*, 332 Ark. 450, 453, 966 S.W.2d 241, 243 (1998) (citing *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997)). Once the moving party makes a *prima facie* showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact. *Dillard v. Resolution Trust Corp.*, 308 Ark. 357, 359, 824 S.W.2d 387, 388 (1992).

On appeal, Short expounds on his argument that Westark is "more in the nature of a school district rather than a branch of the State" so that it cannot claim protection from suit through sovereign immunity. Short also asserts for the first time on appeal that Westark

is comparable to a housing authority, which does not enjoy sovereign immunity. Short addresses Horn's affidavit for the first time on appeal, arguing that his assertions indicate that Westark is controlled by a local board, much like a local school board, and that the State's Higher Education Coordinating Board acts more as an advisor than as a regulator. Because Westark has "the power to tax, acquire, use, and own property in the College's name, and to govern itself locally," it has more autonomy than schools in the University of Arkansas system and does not enjoy sovereign immunity. Short argues that on the funding issue, Westark is within a constitutionally created district that can levy taxes to fund the school. Therefore, although the State provides financing to Westark, Westark's district can levy taxes to pay for school operations, and the school has great discretion in how it uses bequests, gifts, and donations to the school. Short argues that the district could levy a millage earmarked in a general fund to pay for such money judgments, and that this would relieve the State from making up the shortfall. In all, Short argues that a money judgment against Westark does not necessarily implicate the State treasury, and that other funding sources could pay such a judgment, thus rendering sovereign immunity an inapplicable protection.

Westark responds first by noting that Short has expanded his argument on appeal and has argued issues that were not addressed below. Particularly, Westark points out that Short's argument that the private endowment funds could be used to pay a judgment was not raised below, that this argument is not supported by proof presented below, and therefore, the argument is speculative. Furthermore, Short's proposition that the Westark district could "raise revenue" by levying a millage for paying judgments is meritless in that millage assessments must be voted on by people in the district, and such millage assessments may only be raised to retire bonds issued to fund capital construction. Westark also notes that the voters in Sebastian County voted to repeal the entire assessed millage for Westark and to dissolve the district in order to merge Westark into the University of Arkansas system as the "University of Arkansas at Fort Smith." In addition, Westark argues as it did below that this case is similar to *Hadley v. North Arkansas Community Technical College*, 76 F.3d 1437 (8th Cir. 1996), in which the Eighth Circuit Court of Appeals found that North Arkansas Community Technical College (NACTC) enjoyed sovereign immunity under the Eleventh Amendment to the U.S. Constitution in a 42 U.S.C. § 1983 discrimination/employment termination case. Westark notes that that court analyzed the case both on the funding issue and on

the control issue, and determined that, although Arkansas community colleges had elements of local funding and control, the majority of the funding and control rested with the State. Therefore, because the Arkansas Civil Rights Act did not waive immunity, sovereign immunity applies. Finally, Westark argues that it also benefits from statutory sovereign immunity created in Ark. Code Ann. § 21-9-301 (Supp. 2001).

At issue is whether Westark is immune from this lawsuit under the protection of the doctrine of sovereign immunity. We must determine whether Westark is "an arm of the State" subject to the protections of sovereign immunity and, if so, whether the legislature has somehow waived that immunity. Sovereign immunity is jurisdictional immunity from suit. *State v. Goss*, 344 Ark. 523, 42 S.W.3d 440 (2001); *Milberg, Weiss, Bershad, Hynes, & Lerach, LLP v. State*, 342 Ark. 303, 28 S.W.3d 842 (2000); *State Office of Child Support Enforcem't v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997). This defense arises from Article 5, Section 20, of the Arkansas Constitution, which provides: "The State of Arkansas shall never be made a defendant in any of her courts." This court has consistently interpreted this constitutional provision as a general prohibition against awards of money damages in lawsuits against the state and its institutions. *See, e.g., Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997); *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771, *cert. denied*, 498 U.S. 824 (1990). The doctrine of sovereign immunity is rigid and may only be waived in limited circumstances. *Mitchell, supra.* This court has recognized only two ways in which a claim of sovereign immunity may be surmounted: (1) where the state is the moving party seeking specific relief; and (2) where an act of the legislature has created a specific waiver of immunity. *Id.*

As we stated long ago in *Pitock v. State,* 91 Ark. 527, 535 (1909), "[A] sovereign State cannot be sued except by its own consent; and such consent is expressly withheld by the Constitution of this State." *See also, Arkansas Tech University v. Link,* 341 Ark. 495, 17 S.W.3d 809 (2000). Recently, we reiterated this express prohibition in *Brown v. Arkansas State HVACR Lic. Bd.,* 336 Ark. 34, 984 S.W.2d 402 (1999). In *Brown,* we pointed out that sovereign immunity is jurisdictional immunity from suit, and where the pleadings show the action is one against the State, the trial court acquires no jurisdiction. However, unlike subject-matter jurisdiction, sovereign immunity can be waived. *Newton v. Etoch,* 332 Ark. 325, 331, 965 S.W.2d 96 (1998); *State v. Tedder,* 326 Ark. 495, 932 S.W.2d 755 (1996); *Cross, supra; Department of Human Servs. v.*

*Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). The doctrine makes no distinction between actions in equity and actions at law. *Id.* Furthermore, a suit against a state official in his or her official capacity is not a suit against that person, but rather is a suit against that official's office. *Brown, supra.* A suit against the board of trustees of a state university is a suit against the State, and is barred by the doctrine of sovereign immunity. *State Comm'r of Labor v. University of Ark.*, 241 Ark. 399, 407 S.W.2d 916 (1966).

 The decisive issue is whether the State's financial obligations would increase if the plaintiffs prevail in their suit. *Link, supra; Commission on Judicial Discipline and Disability v. Digby*, 303 Ark. 24, 792 S.W.2d 594 (1990). If so, the action is barred by the doctrine of sovereign immunity. *Id.* As the rule has been more commonly stated, if a judgment for the plaintiff will operate to control the action of the State or subject it to liability, the suit is one against the State and is barred by the doctrine of sovereign immunity. *Grine v. Board of Trustees*, 338 Ark. 791, 2 S.W.3d 54; *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990); *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938).

 As the initial consideration, we must consider whether Westark is "an arm of the State" or a State entity subject to the protections of the sovereign-immunity doctrine. While Short raises several arguments here in support of his position that Westark is not a State agency, only one of those arguments was raised below at the trial level. It is well settled that this court does not consider arguments raised for the first time on appeal. *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999). Preserved for this appeal is Short's assertion that Westark is more akin to a school district, which does not enjoy sovereign immunity, *see Dermott Special School District v. Johnson*, 343 Ark. 90, 32 S.W.3d 477 (2000), rather than a State university and its employees acting in their official capacity, which do, *see Grine, supra.* Short is correct that Westark is within a legislatively established district created to oversee the operations of Westark. The creation of this district stems from Arkansas Constitutional Amendment 52, §§ 1 and 2, allowing the General Assembly to authorize the State Board of Higher Education to formulate criteria for establishing community colleges, and to propose the creation of the district to the qualified voters in the proposed district, who then may vote to create the district. *See also*, Ark. Code Ann. §§ 6-61-505 to -510, -513 (Repl. 1996) (Supp. 2001). Once that district is created, the voters may levy a property tax to

help fund the operation of the district for the "acquisition, construction, reconstruction, repair, expansion, operation, and maintenance of facilities therefor." Arkansas Const. Amend. 52, §§ 1 and 2. The voters may also vote to repeal or eliminate any millage previously assessed. *Id.* Funding is also provided by the State for the "general operation of an adequate comprehensive educational program." Ark. Code Ann. § 6-61-601 (Repl. 1996). This statute further states:

> The amount of state revenues to be recommended for the general operation of each community college shall be the difference between the recommended budget and the total of income for general operation, including student fees and any other income except local taxes. The recommended budget for general operation shall be sufficient to provide an adequate comprehensive educational program which serves the needs of the state and the community college's service area as determined by the State Community College Board.

Ark. Code Ann. § 6-61-601(c)(2). Furthermore, because Westark receives funds from the State as a state-supported institution of higher learning, the General Assembly considers it a "State agency." Ark. Code Ann. § 19-4-801(1) (Repl. 1996).

The evidence presented in Westark's motion indicates that from 1994 to 2000, Westark averaged over 70% in state-appropriated funds, approximately 25% in funds from tuition and fees, and about 3% in funds from interest, rental, library, fines, student fees, etc. Most notably, Westark received no fees during this time from local tax levies. These facts make this case quite similar to *Hadley, supra,* in which the Eighth Circuit Court of Appeals considered whether the North Arkansas Community Technical College, another Arkansas community college, enjoyed Eleventh Amendment sovereign immunity as a State agency in a federal discrimination lawsuit. The court determined that it did. In coming to this conclusion, the Eighth Circuit Court of Appeals considered the Arkansas constitutional and statutory provisions noted above, and found that during the 1993-1994 fiscal year, NACTC's operating expenses totaled 75.1% in state-appropriated funds, 22.1% in tuition payments, and 2.8% in federal grants and private donations. NACTC also received approximately 3% of its total budget from local tax revenues specifically earmarked to finance new acquisitions. Clearly, the numbers here are on par with those in *Hadley*, and, in fact, do not include any levied taxes to complete the total operating budget as NACTC received in *Hadley*.

██ ██ As in *Hadley*, Short argues here that money to pay the judgment could come from other sources within Westark's budget than those monies received from the State. However, as the *Hadley* court explained, that is not the proper inquiry. The court stated:

> In these circumstances, we conclude that Hadley's claim "is in reality a suit against the state," *Sherman*, 16 F.3d at 863, because "the funds to pay any award will be derived from the state treasury," *Dover Elevator*, 64 F.3d at 446. Hadley argues that he seeks damages of less than $250,000 and therefore any award could be paid from other sources, such as future local tax increases, tuition, federal grants, or other discretionary funds. However, while there is dictum in *Sherman* suggesting it is relevant "whether a judgment against the University can be paid from non-state funds under the University's discretionary control," 16 F.3d at 865 (emphasis added), traditional Eleventh Amendment cases did not require a speculative analysis of whether a college largely funded by the State might be able to pay a judgment in the first instance from other revenue sources, and *Greenwood* and *Sherman* were not departures from prior Eleventh Amendment jurisprudence. *See Treleven v. University of Minnesota*, 73 F.3d 816, 818-19 (8th Cir.1996). *Mt. Healthy* directs us to examine "the nature of the entity," 429 U.S. at 280, 97 S.Ct. at 572, not the nature of the relief the plaintiff seeks.

> Arkansas calls NACTC a state agency and has made its daily operations financially dependent upon the state treasury. The district's never-exercised authority to supplement NACTC's operating budget with limited local tax revenues does not change the fact that the State has created an institution of higher learning "that is dependent upon and functionally integrated with the state treasury." *Kashani v. Purdue Univ.*, 813 F.2d 843, 846 (7th Cir.), *cert. denied*, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987). The relevant funding inquiry cannot be whether NACTC enjoys some non-state funding, such as user fees (tuition), because then most state departments and agencies, and all state universities, would be denied Eleventh Amendment immunity. Here, even if NACTC could initially satisfy a judgment from other operating revenues, such as tuition payments or federal grants, the judgment would produce a higher operating budget shortfall that must, by state law, be satisfied by an appropriation from the state treasury. Thus, Hadley's action "is in essence one for the recovery of money from the state." *Ford Motor*, 323 U.S. at 463-64, 65 S.Ct. at 350.

*Hadley*, 76 F.3d at 1440-1441. Such is the case here in that if Westark were not immune from suit merely because it receives

money for general operating expenses from sources other than the State treasury, such as funding from tuition, tax levies, or private grants, the State by law would be statutorily required to make up the difference. Therefore, any money pulled from Westark's operating funds would necessarily have to be replaced with State money to cure the shortfall. As such, a suit against Westark is a suit against the State.[1]

■ Because Westark is a State agency subject to sovereign-immunity protection, we move to the second leg of the inquiry to determine whether the State waived immunity for Westark by enacting the Arkansas Civil Rights Act. As noted above, this court has recognized only two ways in which a claim of sovereign immunity may be surmounted: (1) where the state is the moving party seeking specific relief; and (2) where an act of the legislature has created a specific waiver of immunity. *Mitchell, supra.* Clearly, here the State is not the moving party seeking specific relief. Therefore, unless the legislature has waived immunity, both the constitutional and statutory guarantees of immunity stand.

■ Short argued below that the General Assembly waived sovereign immunity for the State in the Arkansas Civil Rights Act, codified at Ark. Code Ann. §§ 16-123-101—16-123-108 (Supp. 2001). However, the legislature specifically stated in Section 16-123-104 that "[n]othing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas." Therefore, Short's argument has no merit. Furthermore, Short offers no other source to show that the legislature waived the State's immunity in any manner.

Affirmed.

---

[1] While our inquiry into sovereign immunity under Arkansas law ends with a determination that the State treasury would be tapped if the pending lawsuit were successful, the Eighth Circuit Court of Appeals in *Hadley* continued its inquiry into Eleventh Amendment sovereign immunity by considering the amount of control the State had over NACTC. The court found that the State's "ultimate control" of NACTC also contributed to the court's determination that NACTC, as a State agency, was immune from federal suit under Eleventh Amendment sovereign immunity.