John DOE, Jane Doe, and Mary Doe *v.*
Clyde BAUM, Fountain Lake School District,
Arkansas School Boards Association, and
Arkansas Department of Education

01–1159 72 S.W.3d 476

Supreme Court of Arkansas
Opinion delivered April 18, 2002

*Bachelor & Newell,* by: *Angela R. Echols* and *C. Burt Newell* , for appellants.

*Laser Law Firm*, by: *Dan F. Bufford* and *Brian A. Brown*, for appellees.

RAY THORNTON, Justice. Appellants, John Doe, Jane Doe, and Mary Doe appeal the July 17, 2001, order of the Garland County Circuit Court, granting summary judgment to appellee, Arkansas Department of Education, ("ADE"), granting partial summary judgment to appellees, Clyde Baum,[1] and Fountain Lake School District ("FLSD"), and certifying the case for appeal pursuant to Ark. R. Civ. P. 54(b). Appellants raise four points for reversal: (1) the trial court erred in ruling that Ark. Code Ann. § 6-17-1113 (Repl. 1999) did not provide coverage in this case; (2) the trial court erred in ruling that Ark. Code Ann. § 6-19-105 (Repl. 1999) had been repealed by implication; (3) the trial court erred in not allowing appellants to proceed under Ark. Code Ann. § 6-19-118 (Repl. 1999); and (4) the trial court erred in granting summary judgment on the issues of gross negligence and/or reckless indifference and in its failure to submit such issues to the jury. We affirm.

Mary Doe, a third-grade girl, was allegedly raped by an eighth-grade boy named James Roe while returning home from school one day in the fall of 1998 on a school bus owned by FLSD and driven by Baum. As a result of this incident, on April 21, 1999, Mary's grandparents and adoptive parents, Mr. and Mrs. Doe, filed the instant action against Baum, alleging torts of common negligence, gross negligence, reckless indifference, and outrage. FLSD was included as a defendant under the theory of vicarious liability. ADE was also included as a defendant for coverage under its "School Worker Defense Program." Finally, the Arkansas School Boards Association ("ASBA") was included as a defendant for coverage under its school motor vehicle liability program.

Mary testified in her deposition that on the day the rape in question occurred, James had commanded all the other students to move up to the front of the bus. Mary further testified that James

---

[1] We note that Mr. Baum's last name was misspelled as "Vaum" in the original styling of the case, and we have corrected the mistake to reflect the correct spelling as "Baum."

made her lay down, and he then pulled her pants down. Mary testified that she did not try to call out to or try to run to her brother, did not call out to or try to run to the bus driver, did nothing to try to get away from James, and did nothing to try to bring the incident to the attention to the other students on the bus. Mary also testified that she did not tell anyone about the incident after she got off the bus and that the first person she told about the incident several months later was Sharon Kyle, one of her teachers, who told her to speak about the incident with Linda Woodson, the school's guidance counselor. Mary told Ms. Woodson that she had been raped on the bus and at two other locations, and Ms. Woodson notified the police. Mary related in her deposition that James had put his hand down her pants another time on the bus and then in the woods and the field next to her home.

Mary also related in her deposition that James had instigated another student, Kenny, to put his hand down her pants while she was on the school bus driven by Baum the previous year. Mary testified that she tried to scream so that the bus driver could hear her, but that she was unable to scream because Kenny had put his arm over her mouth so that she could not scream. Mary testified that as she left the bus, she notified Baum of the incident, but that Baum told her that he could not do anything about it because Kenny had already disembarked from the bus. Mary testified that she did not know whether Baum had reported the incident with Kenny to school officials. Mary also testified that she and her grandmother had gone up to the school, where they told Ms. Cox, the K–2 principal about the incident involving Kenny, and Kenny's bus-riding privileges were suspended. Mary stated in her affidavit that she told Ms. Cox that James had been involved in the incident with Kenny. Mary further stated in her affidavit that her grandmother had told Charles Clark, the Superintendent of FLSD, and Ronnie Schroeder, Baum's supervisor, what had happened.

Kory Doe, Mary's brother, who was one of the students on the bus at the time of the incident with James, testified in his deposition that on the day of the incident, he bent down to pick up a pencil he had dropped on the floor of the bus, noticed Mary's foot

down on the floor, and then saw that James had his hand down her pants. Kory testified that no noises were made by either Mary or James during the incident and that no one told him, nor did he hear, that anyone saw the incident. Kory further testified that neither he nor Mary notified the driver about the incident at that time and that Mary told him not to tell anyone. Jane Doe testified in her deposition that she was not made aware of the incident until Mary complained of a problem some days or weeks later.

Baum testified in his deposition that Mary had told him of the incident involving Kenny putting his hands down her pants, but that Kenny had disembarked the bus by the time he learned of the incident. Baum also testified that he immediately told Mary's grandmother, who met Mary at the bus stop that night, of the incident. Baum testified that he did not fill out a pink slip to report the incident because he reported it to Mr. Schroeder, his supervisor, in person as soon as he got finished with his bus route. Baum further testified that he never got any report that James was involved in the incident.

Baum testified that the first he learned of the incident with James was when Mr. Schroeder mentioned to him that he needed to talk to a police officer. Baum testified that neither Mary nor Kory ever reported the incident to him, nor were there any reports from other students. Baum also testified that he never noticed Mary getting off the bus crying, looking disheveled, or looking as though she were hurt in any way in the fall of 1998.

Mr. Schroeder testified in his deposition that James had been a problem student on several prior occasions. Specifically, Schroeder testified that James had been kicked off the bus for using profanity with Baum and Schroeder, had been arrested on at least one occasion while at school, and had been truant, among other things. Schroeder further testified that he did not remember receiving a report involving the incident between Mary and Kenny, but that he would not dispute Baum's memory if Baum said that he had reported such an incident between Mary and Kenny. Schroeder further testified that Baum had been involved in an accident one time where some students were misbehaving in the back of the bus while he was driving on a wet road, and he got

onto the edge of the dirt, slid, and hit a tree. Schroeder testified that he counseled Baum after the accident that he needed to watch the road instead of the kids and that his first responsibility was driving the bus.

On August 8, 1999, appellee ASBA filed a motion for summary judgment, arguing that its liability insurance to FLSD, as is required under Ark. Code Ann. § 21-9-303 (Repl. 1999), did not provide coverage in Mary's case because the incident in question did not arise out of the ownership, maintenance, or use of the vehicle as required under the Motor Vehicle Safety Responsibility Act, which is codified at Ark. Code Ann. § 27-19-713(b)(2) (Supp. 2001). The ASBA argued that its policy only afforded protection in cases where there had been a collision that caused injuries to a third party. The trial court denied ASBA's motion for summary judgment, concluding that the memorandum of intent provided coverage for damages "arising out of the ownership, maintenance, or use of any automobile," that "accident" was defined as an event that resulted in personal injury, and, as such, the facts alleged in the complaint might be covered by insurance provided by the ASBA. That ruling is not at issue in this appeal, but remains the subject of future litigation.

On April 25, 2001, appellees Baum, FLSD, and ADE filed a motion for summary judgment, arguing that (1) they were immune from liability for negligence, gross negligence, and reckless indifference; (2) the coverage afforded by the ADE under Ark. Code Ann. § 6-17-1113 only required coverage for acts that have not traditionally been immune, and school district employees have traditionally been immune from acts of negligence; and (3) ADE was entitled to sovereign immunity and could not be sued.

On July 17, 2001, the Garland County Circuit Court issued an order: (1) granting summary judgment to ADE and dismissing appellants' complaint against it with prejudice; (2) granting partial summary judgment to Baum and FLSD and dismissing appellants' complaint against them as to the civil liability allegations; (3) ordering the complaint as to the motor vehicle liability allegations against Baum and FLSD and as to the allegations of liability protection or coverage under the program provided by ASBA to

remain pending; and (4) certifying the case for appeal pursuant to Ark. R. Civ. P. 54(b). It is from this order that appellants bring this appeal.

We have outlined our standard of review of summary-judgment cases on numerous occasions. In *Short v. Westark Community College*, 347 Ark. 497, 65 S.W.3d 440 (2002), we stated:

> In reviewing a summary-judgment case, we need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Aka v. Jefferson Hosp. Assoc.*, 344 Ark. 627, 42 S.W.3d 508 (2001). Notably, the moving party always bears the burden of sustaining a motion for summary judgment. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. However, the moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56; *Robert D. Holloway, Inc. v. Pine Ridge Add'n Resid. Prop. Owners*, 332 Ark. 450, 966 S.W.2d 241 (1998) (citing *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997). Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact. *Dillard v. Resolution Trust Corp.*, 308 Ark. 357, 824 S.W.2d 387 (1992).

*Short, supra.* With this standard of review in mind, we now turn to the points on appeal.

For their first point on appeal, appellants argue that the trial court erred in ruling that Ark. Code Ann. § 6-17-1113 did not provide coverage in this case. Specifically, appellants contend that Ark. Code Ann. § 6-17-1113 provides coverage in this case because, pursuant to Ark. Code Ann. § 6-19-105,[2] school bus drivers have not traditionally been immune for their negligent acts, and the statute provides coverage for acts or omissions from

---

[2] We note that Ark. Code Ann. § 6-19-105 has been repealed by implication. See our discussion at pp. 12-15 infra.

which employees have not traditionally been immune. Appellees argue, however, that the trial court was correct in ruling that Ark. Code Ann. § 6-17-1113 did not provide coverage in this case because Arkansas recognizes immunity for school districts and their employees from civil liability for negligent torts, except to the extent that they have applicable liability insurance. We agree with appellees and affirm on this point.

We first note that Arkansas has long recognized immunity for school districts and their employees from civil liability for negligent torts. The applicable statute is Ark. Code Ann. § 21-9-301 (Supp. 2001), which provides:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, *school districts*, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies *shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.*

*Id.* (emphasis added). We have held that the immunity granted to the political subdivisions named in Ark. Code Ann. § 21-9-301 extends to the officials and employees of that governmental entity. *See Cousins v. Dennis*, 298 Ark. 310, 767 S.W.2d 296 (1989) (citing *Matthews v. Martin*, 280 Ark. 345, 658 S.W.2d 374 (1983)).

The statute that appellants contend provides coverage in the present case is Ark. Code Ann. § 6-17-1113, which provides, in pertinent part:

> (a) The Department of Education is authorized and directed to establish a School Worker Defense Program for the protection of:
>
> * * *
>
> (13) Bus drivers and mechanics employed by public schools;
>
> * * *
>
> against civil liability, attorney's fees, and costs of defense for acts or omissions of each employee or volunteer in the performance of his or her duties as a volunteer or his or her official duties as a

school employee, including civil liability for administering corporal punishment to students, in the amount of two hundred fifty thousand dollars ($250,000) for incidents which occurred prior to July 1, 1999, and one hundred fifty thousand dollars ($150,000) for each incident which occurs after June 30, 1999.

\* \* \*

(d) The investigation of any incident or the defense of any protected person does not waive or forfeit any immunity or authorization to provide for hearing and settling claims extended to educational entities and their personnel by the laws of the State of Arkansas.

*Id.* Pursuant to the authorization of this statute, ADE opted to establish the School Employee — School Board Protection Program ("Program").[3]

---

[3] The language of the Program provides, in pertinent part:

A. PERSONS PROTECTED

2. The following employees of public school districts and public school educational cooperatives:
g. Bus drivers

B. GOVERNMENTAL IMMUNITY IS NOT WAIVED BY THIS PROGRAM

The investigation of any incident, the defense of any protected person, nor any protection provided by this program, does not waive or forfeit any immunity extended to any protected person as identified in Paragraph A. above by the laws of the State of Arkansas.

C. WHAT WILL THE PROTECTION PROGRAM PAY?

5. SUCH AUTOMOBILE PROTECTION as afforded shall not apply within the state of Arkansas and shall apply to only those persons identified in Paragraph A(2) and A(3) and then only when operating a vehicle owned or leased by, and with the permission of, a public school district or public school educational cooperative. Such automobile protection provided shall be excess to any coverage in force on the involved school vehicle driven by a covered person and shall not waive any immunities that would otherwise apply.

D. EXCLUSIONS — PROTECTION DOES NOT APPLY TO:

7. Any and all claims for damages which are subject to the affirmative defense of governmental immunity under Arkansas law.

School Employee — School Board Protection Program, at 1-4.

■ ■ We interpreted the scope of Ark. Code Ann. § 6-17-1113 in *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 594 (1992), where we stated:

> Given Arkansas' strong adherence to governmental immunity, we think that if the legislature had intended to require ADE to insure against the negligent acts of school district employees, claims from which school districts traditionally have been immune, they would have expressly stated this intent. In the absence of such express intent, we do not think this court should change the longstanding public policy of the State of Arkansas.
>
> This court interprets Ark. Code Ann. § 6-17-1113 to authorize and direct ADE to establish a self-insurance fund or procure insurance policies to insure school district employees against acts or omissions from which they have not traditionally been immune, *i.e.*, civil rights claim under federal legislation and intentional or malicious acts or omissions. In *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989), we stated that Ark. Code Ann. § 21-9-301 does not provide immunity from intentional torts. Similarly, in *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986), we stated that the statute does not protect immune employees from malicious acts. Therefore, we hold that ADE was not statutorily required to insure against the negligent acts of school district employees.

*Waire, supra*; see also *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), where we stated, "The *Waire* decision also reaffirmed our previous holdings that state employees are not immune from suit for negligence, to the extent the employees are covered by other viable liability insurance." *Id.* (citing *Waire, supra; Carter v. Bush*, 296 Ark. 261, 753 S.W.2d 534 (1988)).

■ Applying the holdings in *Waire, supra*, and *Deitsch, supra*, to the present case, we hold that ADE was not required under Ark. Code Ann. § 6-17-1113 to provide coverage for the alleged negligent acts of Baum because the immunity statute codified at Ark. Code Ann. § 21-9-301 provides governmental agencies, including ADE, as well as school districts and their employees, immunity for negligent acts, and, thus, the trial court did not err in concluding that Ark. Code Ann. § 6-17-1113 does not provide coverage in this case. Moreover, the language included in the Program document itself does not waive the

immunity afforded to either Baum or FLSD by the immunity statute; rather, that language expressly preserves immunity under the Program. Accordingly, we affirm on this point.

Because we have held that the trial court did not err in concluding that Ark. Code Ann. § 6-17-1113 does not require ADE to provide coverage in the present case, appellants' sole avenue of redress is by way of the exception that lies within the immunity statute, which provides for a school district and its employees to be immune from liability and from suit for damages, except to the extent that it may be covered by liability insurance. Ark. Code Ann. § 21-9-301; *see also Deitsch, supra; Waire, supra; Carter, supra.* The trial court in the present case has previously ruled that the motor vehicle liability protection or coverage afforded to Baum and the FLSD by the ASBA may, potentially, apply to the present claim, and this ruling is not at issue on appeal. Accordingly, because appellants's claim regarding the motor vehicle liability issue remains the subject of future litigation, they may still proceed under the exception to the immunity statute.

For their second point on appeal, appellants argue that the trial court erred in ruling that Ark. Code Ann. § 6-19-105 had been repealed by implication upon the enactment of Ark. Code Ann. §§ 21-9-301, 21-9-303, and 6-17-1113. We disagree and affirm.

Ark. Code Ann. § 6-19-105, which was first enacted in 1943 and has not previously been cited by our appellate courts, provides:

> The driver or operator of a bus used for the transportation of school children to and from school or to and from other school activities as declared by the school district board of directors to be school activities shall be liable in damages for the death of or injury to any school child resulting from a failure of the driver or operator to use reasonable care while transporting pupils.

*Id.*

Ark. Code Ann. § 21-9-301 provides:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special

> improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

*Id.* We have held that the immunity granted to the political subdivisions named in Ark. Code Ann. § 21-9-301 extends to the officials and employees of such governmental entities. *Cousins, supra* (holding that school district employees were immune from tort liability under Ark. Code Ann. § 21-9-301 for alleged acts of negligence they committed while performing their official duties for the school district)*; see also Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315 (1985); *Matthews, supra.*

 We have outlined our statutory construction rules regarding repeal by implication on numerous occasions. When interpreting statutes, the first rule of construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Henson v. Fleet Mortgage Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995). Yet the basic rule of statutory interpretation to which all other interpretive guides must yield is to give effect to the intent of the legislature. *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996); *Henson, supra.* In ascertaining an act's intent, the appellate court examines the statute historically, as well as the contemporaneous conditions at the time of the enactment, the object to be accomplished, the remedy to be provided, the consequences of interpretation, and matters of common knowledge within the court's jurisdiction. *Rogers, supra; Henson, supra; City of Little Rock v. AT & T Communications of the S.W., Inc.*, 318 Ark. 616, 888 S.W.2d 290 (1994). A statute of a general nature does not repeal a more specific statute unless there is a plain, irreconcilable conflict between the two. *Winston v. Robinson*, 270 Ark. 996, 606 S.W.2d 757 (1980); *Patrick v. State*, 265 Ark. 334, 576 S.W.2d 191 (1979). Thus, the treatment of a general repealer clause does not differ from the rules applicable to a repeal by implication. The fundamental rule of that doctrine is that a repeal by implication is not

favored and is never allowed except when there is such an invincible repugnancy between the provisions that both cannot stand. *Donoho v. Donoho*, 318 Ark. 637, 887 S.W.2d 290 (1994); *Uilkie v. State*, 309 Ark. 48, 827 S.W.2d 131 (1992). Repeal by implication is not a favored device in our interpretation of statutes, and we must construe all statutes relating to the same subject matter together. *Waire, supra.* "[A] repeal by implication is accomplished where the Legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new." *Uilkie, supra* (quoting *Berry v. Gordon*, 237 Ark. 547, 376 S.W.2d 279 (1964)); *see also Bryant v. English*, 311 Ark. 187, 843 S.W.2d 308 (1992) (constitutional provision). Hence, the older act will be "repealed" if it is apparent that the latter act was intended to substitute for the prior one. *Uilkie, supra.*

In light of the enactment of Ark. Code Ann. § 21-9-301, which provides immunity from tort actions for school districts and their employees, except to the extent of liability insurance, it appears that Ark. Code Ann. § 6-19-105 has been repealed by implication. The Legislature took up the whole subject of school bus driver liability anew with the enactment of Ark. Code Ann. § 21-9-301 and has covered the entire ground of the subject matter of Ark. Code Ann. § 6-19-105 and clearly intended Ark. Code Ann. § 21-9-301 as a substitute. Ark. Code Ann. § 6-19-105, which was enacted in 1943, imposes liability upon school bus drivers for their negligence in the transportation of students. Ark. Code Ann. § 21-9-301, however, which was enacted in 1969, creates immunity for such school bus drivers for their negligent acts, except to the extent that there is applicable liability insurance coverage. In addition, the adoption of a comprehensive scheme of motor vehicle liability coverage under Ark. Code Ann. § 21-9-303[4] and the Legislature's decision not to amend Ark. Code Ann. § 6-17-1113 to reflect disagreement with our deci-

---

[4] Ark. Code Ann. § 21-9-303 provides:

(a) All political subdivisions shall carry liability insurance on their motor vehicles or shall become self-insurers, individually or collectively, for their vehicles, or both, in the minimum amounts prescribed in the Motor Vehicle Safety Responsibility Act, § 27-19-101 et seq.

sions in *Waire* and *Deitsch* indicates tacit recognition by the Legislature that school bus drivers are immune from civil liability for negligence, except to the extent that they have applicable liability insurance. The Legislature was aware of our decisions in *Waire* and *Deitsch*, where we held that the Ark. Code Ann. § 6-17-1113 does not waive employees' immunity for negligent acts, but has never taken steps to amend the statute to reflect disagreement with those decisions.

Under Ark. Code Ann. § 21-9-301, school districts and their employees are immune from tort actions except to the extent that they are covered by liability insurance. We conclude that the legislature did not intend to treat school bus drivers, unlike any other governmental entity's employees, as not being immune for their acts of negligence. To reach a contrary conclusion would create a repugnancy that the Legislature surely could not have intended. Accordingly, we affirm the trial court's finding that Ark. Code Ann. § 6-19-105 has been repealed by implication.

 For their third argument on appeal, appellants argue that the trial court erred in not allowing appellants to proceed under Ark. Code Ann. § 6-19-118 (Repl. 1999).[5] Specifically,

---

(b) The combined maximum liability of local government employees, volunteers, and the local government employer in any action involving the use of a motor vehicle within the scope of their employment shall be the minimum amounts prescribed in the Motor Vehicle Safety Responsiblity Act, § 27-19-101 et seq., unless the political subdivision has purchased insurance coverage or participates in a self-insurance pool providing for an amount of coverage in excess of the minimum amounts prescribed in the Motor Vehicle Safety Responsibility Act, § 27-19-101 et seq., in which event the maximum liability of the insurer or pool shall be the limits of the coverage provided for in the policy or agreement.

(c)(1) Any person who suffers injury or damage to person or property caused by a motor vehicle operated by an employee, agent, or volunteer of a local government covered by this section shall have a direct cause of action against the insurer if insured, or the governmental entity if uninsured, or the trustee or chief administrative officer of any self-insured or self-insurance pool.

(2) Any judgment against a trustee or administrator of a self-insurance pool shall be paid from pool assets up to the maximum limit of liability as herein provided.

*Id.*

[5] We note that Ark. Code Ann. § 6-19-118 (Repl. 1999) has since been repealed by Act 1220 of 2001. *See* Ark. Code Ann. § 6-19-118 (Supp. 2001).

appellants argue that Ark. Code Ann. § 6-19-118 directed ADE to provide additional insurance coverage for injuries that occur on school buses. Appellants further argue that despite the fact that the statute became effective in 1999, after the alleged rape occurred, it should be applied retroactively. Appellees, on the other hand, assert that the trial court was correct in not allowing appellants to proceed under Ark. Code Ann. § 6-19-118 because the alleged incident occurred months prior to the statute's enactment, there is no indication that the Legislature intended it to apply retroactively, and the statute was only funded by the Legislature once, is no longer funded, and the statute's effectiveness is expressly contingent upon the appropriation of necessary funding.

We note that appellants have failed to preserve for appeal their argument regarding the applicability of Ark. Code Ann. § 6-19-118 (Repl. 1999) to the facts of the present case. Appellants in this case failed to obtain a ruling from the trial court on the issue. The trial court did not rule on the issue either at the hearing or in its order, which was drafted by appellees and approved by appellants. Additionally, appellants did not seek to set aside the order in order to seek a ruling on the issue. It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. *E.g., Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001) (citing *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998)). Accordingly, we reject this argument without reaching the merits.

For their final argument on appeal, appellants argue that the trial court erred in granting summary judgment to Baum on the issues of gross negligence and/or reckless indifference and that such issues should have been submitted to the jury. We disagree.

As we previously set out, our standard of review of summary-judgment cases is well settled. In reviewing a summary-judgment case, we need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Short, supra* (citing *Aka v. Jefferson Hosp. Assoc.*, 344 Ark. 627, 42 S.W.3d 508 (2001)). The moving party is entitled to summary judgment if the pleadings, depositions, answers to inter-

rogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Short, supra* (citing Ark. R. Civ. P. 56; *Robert D. Holloway, Inc. v. Pine Ridge Add'n Resid. Prop. Owners,* 332 Ark. 450, 966 S.W.2d 241 (1998) (citing *McCutchen v. Huckabee,* 328 Ark. 202, 943 S.W.2d 225 (1997)).

We note that the only authority appellants have cited to us regarding the applicable standards of gross negligence and reckless negligence are from *Black's Law Dictionary* (6th ed. 1990). *Black's Law Dictionary* defines "gross negligence" as "[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Id.* at 1033. *Black's Law Dictionary* defines "reckless negligence" as being when "the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Id.* at 1034.

Here, viewing the proof in the light most favorable to appellants, we cannot say that Baum's conduct rose to the level of gross negligence or reckless indifference. There is no evidence showing that Baum intentionally failed to perform a manifest duty in reckless disregard of the consequences as affecting the life of Mary, nor that he intentionally performed an act of an unreasonable character in disregard of a risk to Mary that was known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It is not controverted that Mary did not try to call out to or try to run to her brother, did not call out to or try to run to the bus driver, did nothing to try to get away from James, did nothing to try to bring the incident to the attention to the other students on the bus, and did not tell anyone about the incident after she got off the bus.

Appellants asserted that Baum was grossly negligent or recklessly indifferent because Baum knew that James was a problem student that he had to keep his eye on and failed to do so. However, appellants failed to provide any evidence that such a failure was in any way intentional. Rather, appellants' deposition testimony shows that one grandparent conceded that things could

happen on a school bus that a driver could not see, and the other grandparent stated that she could not contend that Baum intentionally tried to harm Mary, but that she thought that he just "wasn't watching those children when he should have been." Additionally, Mary admitted in her deposition testimony that Baum did not know what James was doing to her.

Appellants also asserted that Baum was grossly negligent or recklessly indifferent because of his knowledge of an incident during the prior year when Mary complained to Baum that another student, Kenny, had improperly touched her. Appellants contended that such earlier incident put him on notice that inappropriate sexual conduct had occurred on the bus. However, there was no evidence of an intentional failure to perform a manifest duty or intentional performance of an act with disregard of a known or obvious risk as a result of the earlier incident. Appellant does not cite any authority, and we know of none, that holds that an incident involving another student during the previous year establishes that a failure to observe or respond to an unobserved incident a year later rises to the level of gross negligence or reckless indifference. Appellants have failed to provide evidence to support the allegation that Baum intentionally failed to perform a manifest duty or act with disregard of a known or obvious risk on the day the incident occurred with regard to James. Applying our standard of review of summary-judgment cases to the present case, we hold that there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law on the issues of gross negligence and reckless indifference.

We again note that the trial court certified this case for appeal of the issues resolved by its order pursuant to the provisions of Ark. R. Civ. P. 54(b) and that the allegations presented by the complaint on the basis of insurance coverage under the motor vehicle liability insurance provided to FLSD by ASBA remains pending.

We conclude that the trial court did not commit reversible error in its disposition of the issues brought forward in this appeal.

Affirmed.

GLAZE, IMBER, JJ., not participating.