The Honorable Rita W. Gruber, Circuit Judge Sixth Judicial District, Eleventh Division 3001 West Roosevelt Road Little Rock, AR 72204
Dear Judge Gruber:
You have presented the following question for my opinion:
 Does Act 1265 of 2003 or Act 1470 of 2003 govern the circumstances under which adjudicated delinquents are required to submit DNA samples?
RESPONSE
It is my opinion that Act 1265 of 2003, rather than Act 1470 of 2003, affirmatively governs the circumstances under which adjudicated delinquents[1] are required to submit DNA samples.
As you note in your correspondence, both Act 1265 and Act 1470 of 2003
amended certain statutes concerning the requirement of obtaining DNA samples. Most significantly, both acts amended A.C.A. § 12-12-1109. That statute previously provided that persons who were adjudicated guilty or who were adjudicated delinquent of certain offenses would be required to submit DNA samples. The two acts amended A.C.A. § 12-12-1109 to remove all pertinent references to juveniles and to persons who were adjudicated delinquent, and Act 1265 created a new section to govern the circumstances under which juveniles who are adjudicated delinquent will be required to submit DNA samples. I will discuss the two acts more fully below.
Act 1265
Act 1265 was entitled "An Act to Provide for Juvenile Sex Offender Assessment, Registration and DNA Samples; and For Other Purposes." It added new sections governing such matters to the Juvenile Code (A.C.A. §9-27-301 et seq.).[2] One of the new sections sets forth the circumstances under which juveniles who are adjudicated delinquent must undergo sex offender assessment and register as sex offenders. The other new section sets forth the circumstances under which juveniles who are adjudicated delinquent must submit DNA samples. It states:
9-27-356. Deoxyribonucleic acid (DNA) samples.
 (a) A person who is adjudicated delinquent for the following offenses shall have a deoxyribonucleic acid (DNA) sample drawn:
(1) Rape, § 5-14-103;
(2) Sexual assault in the first degree, § 5-14-124;
(3) Sexual assault in the second degree, § 5-14-125;
(4) Incest, § 5-26-202;
(5) Capital murder, § 5-10-101;
(6) Murder in the first degree, § 5-10-102;
(7) Murder in the second degree, § 5-10-103;
(8) Kidnapping, § 5-12-102;
(9) Aggravated robbery, § 5-12-103; and
(10) Terroristic Act, § 5-13-310.
 (b) The court shall order a two hundred fifty dollar ($250) fine unless the court finds that the fine would cause an undue hardship.
 (c)(1) A juvenile adjudicated delinquent for one of the offenses listed in subsection (a) of this section shall have a deoxyribonucleic acid (DNA) sample drawn upon intake at a juvenile detention facility or intake at a Division of Youth Services of the Department of Human Services facility.
 (2) If the juvenile is not placed in a facility, the juvenile probation officer to which the juvenile is assigned shall ensure that the deoxyribonucleic acid (DNA) sample is drawn.
 (d) All deoxyribonucleic acid (DNA) samples taken under this section shall be taken in accordance with regulations promulgated by the State Crime Laboratory.
Acts 2003, No. 1265, § 5.
In addition to adding the above quoted specific provisions concerning the circumstances under which juveniles would be required to undergo sex offender assessment and submit DNA samples, and in addition to amending A.C.A. § 12-12-1109 (as noted previously) to remove all pertinent references to juveniles and persons who were adjudicated delinquent, Act 1265 also included a section amending A.C.A. §§ 12-12-905 and -906, which govern the question of who must register as a sex offender, to similarly remove all references to juveniles. See Acts 2003, No. 1265, §§ 2 and 4.
It should be noted that Act 1265 included a requirement that "[o]nce a juvenile is ordered to register as a sex offender, he or she shall be subject to the registration requirements set forth in A.C.A. §§12-12-904, 12-12-906, 12-12-908, 12-12-909, and 12-12-912." See
Acts 2003, No. 1265, § 2.
Act 1470
Act 1470 was entitled: "An Act To Require DNA Sampling of Persons Convicted of Felony Offenses Resulting in Confinement; and For Other Purposes." It accomplished several purposes. As mentioned previously, it (like Act 1265) amended A.C.A. § 12-12-1109 to remove all pertinent references to juveniles and persons who were adjudicated delinquent. As amended, that statute now governs only the circumstances under which DNA samples must be submitted by persons who are "adjudicated guilty" of certain offenses. Act 1470 also amended A.C.A. § 12-12-1103, which sets forth the definitions of certain key terms for purposes of that subchapter. Finally, it amended A.C.A. §§ 12-12-1105, -1110 and -1111, which govern the state DNA data base and which establish certain required procedures for the taking and use of DNA samples and records. It should be noted that these amendments did retain two references to juveniles, both of which occur in the context of a stating of the state crime laboratory's responsibilities and duties. One such reference occurs in Act 1470's amended version of A.C.A. § 12-12-1105, which states:
 (b) The State DNA Data Base shall have the capability provided by computer software and procedures administered by the State Crime Laboratory to store and maintain deoxyribonucleic acid (DNA) records related to:
* * *
 (2) Convicted offenders and juveniles adjudicated delinquent who are required to provide a DNA sample under this subchapter;
A.C.A. § 12-12-1105, as amended by Acts 2003, No. 1470, § 3.
The other reference to juveniles occurs in the amended version of A.C.A. § 12-12-1111(c), which states:
(c) Use of tests.
* * *
 (2) The results of the analysis conducted pursuant to this subchapter from a person adjudicated delinquent may be used for any law enforcement agency identification purpose, including adult prosecution.
A.C.A. § 12-12-1111(c), as amended by Acts 2003, No. 1470, § 3.
These references to juveniles in the amended versions of A.C.A. §12-12-1105 and -1111 are clearly relevant only to the State Crime Lab's handling of DNA samples submitted by those juveniles who are required to submit such samples under the new provisions of the Juvenile Code. I acknowledge that the amended version of A.C.A. § 12-12-1105(c)(2), quoted above, refers to "convicted offenders and juveniles adjudicated delinquent who are required to provide a DNA sample under thissubchapter." I interpret this phrase to be a reference to the requirement stated in Act 1265, § 2 that "[o]nce a juvenile is ordered to register as a sex offender, he or she shall be subject to the registration requirements set forth in A.C.A. §§ 12-12-904, 12-12-906, 12-12-908,12-12-909, and 12-12-912." In other words, juveniles are brought within the applicability of A.C.A. §§ 12-12-904, 12-906, 12-12-908, 12-12-909, and 12-12-912 only after they have been deemed to be required under the Juvenile Code to submit a DNA sample.
The Consistency Between the Two Acts
In my opinion, Act 1265 and Act 1470 of 2003 are entirely consistent. The intent of both acts was clearly to remove juveniles from the applicability of the statutes governing adult sex offenders and to create a separate set of requirements to govern juvenile sex offenders. Moreover, I note that the provisions of A.C.A. § 12-12-1109, which previously governed the obtaining of DNA samples from both adult and juvenile offenders, cannot, under its applicable definitions, apply to juveniles who are adjudicated delinquent. The language of that statute now applies only to persons who are "adjudicated guilty." Such language by definition cannot apply to juveniles who are adjudicated delinquent. The term "adjudication of guilt" is defined, for purposes of the State Convicted Offender DNA Database Act (A.C.A. § 12-12-1101 et seq.) as follows:
 (1) "Adjudication of guilt" and words of similar import mean a plea of guilty, a plea of nolo contendere, a negotiated plea, a finding of guilt by a judge, or a finding of guilt by a jury;
A.C.A. § 12-12-1103(1).
This definition clearly refers to an adjudication that is rendered in a case involving a criminal charge rather than a delinquent proceeding before the juvenile court. See A.C.A. § 9-27-306 and A.C.A. § 9-27-318
(making clear the exclusive jurisdiction of the juvenile division of circuit court over delinquency matters and the distinctions between the jurisdiction of the juvenile and criminal divisions of circuit court). Moreover, even if a viable argument could be made that the language of A.C.A. § 12-12-1109, as amended, could be interpreted to apply to juveniles, it is my opinion that the argument would fail in light of the principle of statutory interpretation under which a general statute must yield to a more specific one. See R.N. v. J.M., 347 Ark. 203,61 S.W.3d 149 (2001). Act 1265 is clearly more specific to juveniles than is Act 1470. I note that although Act 1470 became law later in time than Act 1265, this fact would be significant only in the event of a conflict between the two. See Doe v. Baum, 348 Ark. 259, 72 S.W.3d 476 (2002);Board of Trustees v. Stodola, 328 Ark. 194, 942 S.W.2d 255 (1997); Uilkiev. State, 309 Ark. 48, 827 S.W.2d 131 (1992); Daniels, Director v. Cityof Fort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980). I simply find no conflict between the two acts.
For these reasons, I must conclude that Act 1265 of 2003, rather thanAct 1470 of 2003, will now govern the circumstances under which adjudicated delinquents will be required to submit DNA samples.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] This conclusion does not apply to juveniles who have been transferred to the jurisdiction of the criminal division of circuit court pursuant to A.C.A. § 9-27-318(b).
[2] It is unclear how these two new sections will be codified, because Act 1265 designated both as A.C.A. § 9-27-356. See Acts 2003, No. 1265, §§ 1 and 5.