The Honorable Jimmy Jeffress State Senator P.O. Box 1695 Crossett, AR 71635-1695
Dear Senator Jeffress:
You have requested my opinion on a situation involving the annexation and detachment of property pursuant to A.C.A. § 14-40-601 through -608.
You indicate that property including parcels owned by at least ten landowners was annexed to the City of Warren in November, 2001. At least three of the landowners now wish to detach their parcels from the annexed property. No utility service has been provided to the parcels owned by these three landowners. However, utility service has been provided to other portions of the annexed property. The property owned by one of the landowners lies at the border of the city. The property owned by the other two landowners does not lie at the border.
You have presented the following questions:
 (1) Does it make a difference if those wishing to detach have had no utility services provided to their annexed land while other landowners have had utility services provided?
 (2) If the first landowner is allowed to detach his property, can the other two landowners "piggy back" with the first landowner and have their land detached as well?
 (3) Does the language contained in A.C.A. § 14-40-608 mean that in order to invoke the detachment statute, only one person must have owned "all the lands originally annexed," or can one or more individual landowners petition to detach their separate parcels, as long as they meet the other criteria of the detachment statute?
RESPONSE
Because the issues raised by your questions are so closely intertwined, I will address all of the questions together.
The issue that is raised by your third question controls the issues that are raised by your first two questions. I will therefore address that issue first. The plain language of A.C.A. § 14-40-608 indicates that in order to be entitled to detachment, the landowner seeking detachment must have owned all of the land that was originally annexed to the city. That statute states in pertinent part:
 (a) Within three (3) years after an annexation proceeding is completed under the provisions of this subchapter and the land remains the boundary of the city or town, the person owning all lands originally annexed into the city or town may be authorized to detach those annexed lands from the city or town under the provisions of this section, so long as the city or town has provided no utility services to those lands.
 (b)(1) When a qualifying landowner notifies the municipality that he or she wishes to detach his or her land from the city or town under this section, the governing body of the municipality may pass an ordinance within thirty (30) days to detach the annexed, qualifying land from the municipality.
 (2)(A) In order to notify the city or town, the landowner shall file an affidavit with the city clerk or recorder stating that:
(i) His or her land was annexed;
 (ii) His or her land is located inside the city or town along the municipal boundary; and
 (iii) He or she desires the annexed land to be detached from the municipality.
A.C.A. § 14-40-608 (emphasis added).
The language emphasized above clearly contemplates a single owner of all the land originally annexed to the city. The Arkansas Supreme Court has consistently employed the "plain language" rule in interpreting statutory language. According to that rule, the language of statutes must be interpreted just as it reads, giving the words their ordinary meanings in common usage. See, e.g., Weiss v. McFadden, 02-1231, 120 S.W.3d 88 (Ark. 2003).
When I apply the plain language rule to the language of A.C.A. §14-40-608, I must conclude that in order to be entitled to detachment, all of the land that was originally annexed to the city must have been owned by a single landowner.
In light of this conclusion, I must conclude that your first two questions are moot.
I must point out, however, that I find this result troubling in light of two other rules of statutory interpretation. On such rule is that which the Arkansas Supreme Court has repeatedly referred to as "the basic rule of statutory construction, to which all other interpretative guides must yield[.]" Death Perm. Dis. Trust v. Anderson, CA 03-255 (Ark.App. 10-22-2003). That rule is to give effect to the intent of the legislature. Id. In the case of A.C.A. § 14-40-608, the intent of the legislature is readily ascertainable from the Emergency Clause ofAct 128 of 1999 (from which Section -608 was codified). The Emergency Clause stated in pertinent part:
 SECTION 5. EMERGENCY CLAUSE. It is hereby found and determined by the Eighty-second General Assembly that certain lands may be inadvertently and unwisely annexed to municipalities in Arkansas while other lands owned by the same person remain outside the municipal boundaries; that this situation creates an inequitable situation for landowners when part of their lands can become divided among various different jurisdictions for land-use regulation and taxation purposes; and that it is possible for these annexation proceedings to occur at any time and this inequitable situation must be remedied at the earliest opportunity.
Acts 1999, No. 128, § 5.
This Emergency Clause appears to indicate that the detachment statute was enacted for the purpose of addressing the inequitable situation that is created in which one person's property may be divided among various different jurisdictions. If the avoidance of such situations was indeed the purpose of Section -608, that purpose would not be fully served by an interpretation under which Section -608 were applicable only in situations in which all of the annexed land was owned by one person. The problem of multiple jurisdictions clearly would remain a problem in situations involving multiple property owners. Moreover, the Emergency Clause refers to "landowners" in the plural.
Finally, the conclusion I have stated above under the plain language rule is troubling under another rule of statutory interpretation, which requires that all statutes addressing the same subject be construed together. See Doe v. Baum, 348 Ark. 259, 72 S.W.3d 476 (2002).
Section -608 was enacted by Act 128 of 1999 for the specifically-stated purpose of amending Title 14, Chapter 40, Subchapter 6 (A.C.A. § 14-40-601
through -606), which had created a right of certain adjoining landowners to petition for annexation to the adjacent city or town. The section that grants the right to petition for annexation states:
 (a) Whenever a majority of the real estate owners of any part of a county contiguous to and adjoining any city or incorporated town shall desire to be annexed to the city or town, they may apply, by petition in writing, to the county court of the county in which the city or town is situated and shall name the persons authorized to act on behalf of the petitioners.
 (b) The "majority of real estate owners" referred to in this section shall mean a majority of the total number of real estate owners in the area affected, if the majority of the total number of owners shall own more than one-half (1/2) of the acreage affected.
A.C.A. § 14-40-601 (emphasis added).
The language quoted above clearly reflects a contemplation that the annexed property could be owned by multiple landowners, rather than that all of the annexed land must be owned by one owner. The fact that Section -608 was enacted to provide a means of reversing an annexation that was accomplished under Section -601 (which clearly envisioned the possibility of multiple landowners) raises the question of whether Section -608 could be interpreted to be applicable in situations in which the annexed property was owned by multiple landowners. Yet such an interpretation would directly conflict with the statute's own plain language.
To summarize, I conclude that under the plain language of A.C.A. §14-40-608, detachment can only be sought in situations in which the all of the land that was originally annexed was owned by one landowner. However, I have noted some troubling aspects of this conclusion in light of some well-established rules of statutory interpretation. This statute could benefit from clarification by the General Assembly.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General