ROBIN F. WYNNE, Associate Justice | Appellee Eugene. Butler filed suit against appellees Calvin- Johnson, in his official capacity,[1] and. :the Board of Trustees of.the University of Arkansas (collectively, the University or appellants), alleging violation of the Arkansas - Whistle-Blower Act (AWBA), Ark.Code Ann. § 21-1-601 et seq., related to his termination from his job as a police officer at the University of Arkansas at. Pine Bluff (UAPB). The University filed a motion to dismiss pursuant to Arkansas Rule of Civil Procedure 12(b)(6), asserting that appel-lee’s third amended complaint failed to state a cause of action that is not barred by sovereign immunity, and the circuit court denied the motion. Rule 2(a)(10) of the Arkansas Rules of. Appellate Procedure-Civil permits an appeal from an interlocutory “order denying a motion to dismiss ... based on the defense of sovereign immunity.” We reverse and dismiss because the 12compjaint fails to state a factual basis for Butler’s claim under the ÁWBA and therefore the appellants are entitled to sovereign immunity^ In his third amended complaint,[2] Butler alleged the following. Butler was,hired by UAPB as a police officer in 2001. He was promoted to detective, and under Chief of Police Fred Weatherspoon, lead detective. After Chief Weatherspoon was fired, Major Maxcie Thomas was named interim chief of police. Chief Thomas “verbally attacked” Butler during two meetings “in attempt to provoke him into insubordination.” Butler goes on to allege that there were competing “plans” for the department — the chancellor’s and Chief Thomas’s — and that he (Butler) was appointed to the position of major while Chief Thomas was not working due to health problems. Further, 18. Several employees were lost during this time and the Department was short of staff. The Officers wanted to meet with Chief Thomas and Plaintiff sent him a memo in regards to that. During the meeting, Chief Thomas immediately started verbally attacking Plaintiff in front of the Officers. He accused Plaintiff of being responsible for the shortage; but everyone looked at him in disbelief. Thomas was acting this way because of Plaintiffs reports to Chancellor Davis, who was an appropriate authority under the [AWBA]. 19. Another one of Plaintiff[’]s duties was being in charge of security of the Harrold Complex Dormitory. The Chancellor gave Rita Ticey the position of Administrator and she was also the Chancellor’s assistant. Ticey dealt with everything dealing with |amoney. She was also the person that checked all the paper work dealing with time sheets and payroll. Ticey purchased and paid all the bills for the Harrold complex. Due to the fact that Plaintiff was not always around, Ticey would sign his name to time sheets. 20. Sometime later an audit was done of the Harrold Complex in order to determine of [sic] public funds had been wasted or stolen. The auditors asked Plaintiff questions in regards to his signature. They questioned Plaintiff about two of his signatures being on numerous time sheets; Rita Ticey and a worker in the Chancellor’s Office signed Plain-tiffins name. They asked Plaintiff if he gave them permission to sign his name. Plaintiff told them yes. They asked Plaintiff if he signed the signature card for them to sign his name and he said no. They showed Plaintiff some documents and he pointed out his actual signature. They talked to Plaintiff for approximately ten minutes. A few days later the things Plaintiff told them had been changed. They told the Chancellor that Plaintiff did not authorize Ticey to sign his name which was a lie. She had talked to Plaintiff and told him that she was going to sign his name because he was out of place. This was normal for others to sign your name. It was apparent that the auditors were not seeking the truth from Plaintiff. They also wanted to know if Plaintiff was related to Ticey and they were told no. Plaintiff therefore participated in an investigation of waste or violation of the employee code of conduct. 21. During the latter part of December 2011 or the first part of January 2012, Plaintiff was tricked to the University Counsel’s Office by Chief Maxcie Thomas. He told Plaintiff that he needed to meet with him in regards to some cases Plaintiff worked. Plaintiff took the files with him and when he got there, Chief Thomas was there also. The University counsel, Jeff Bell, another Attorney and Maxcie Thomas were in the conference room. At all times. relevant, Jeff Bell was acting within the scope of his employment as a lawyer for the Defendant. After the interview began, they asked Plaintiff a few questions and then the female attorney left. Goswick then entered the room. Attorney Bell and Go-swick immediately started questioning Plaintiff in regards to the audit. ■ The audit was an investigation, hearing, court proceeding, legislative or other inquiry, or in any form of administrative review to determine waste or theft of public money. 22. The information Plaintiff told them was true. Jeff Bell constantly told Plaintiff that he was . lying. Plaintiff kept telling them what he was saying was the truth. They told Plaintiff that the Chancellor was making a fool out of him. They told Plaintiff if he told them what they need to know that he would protect him. There was nothing to tell and he became agitated. At one point he.asked Chief Thomas if Plaintiff did any work for him. Chief Thomas lied and told him that Plaintiff only did work and ran errands for the Chancellor and Ticey. 23. If any money was mismanaged Plaintiff had nothing to do with it. Max-cie Thomas has lied on Plaintiff on numerous occasions. He had made it a point to do everything he could to get Plaintiff fired. Plaintiff had verbally complained on him and filed a grievance on him. This was protected activity as well. Thomas has belittled |,(Plaintiff In front of Dr. Herts, the grievance Officer for the University. This was a violation of the Defendant’s code of conduct. 24. Shortly after the meeting with Bell and Thomas ended, Bell told Plaintiff he would be terminated because of his participation in the investigation and his communication with the auditors. As Bell promised, on February the 24,. 2012 Plaintiff was terminated. Butler claims that he left personal items, including a printer and refrigerator, at his office and that Chief Thomas has refused to release his property. Butler goes on to state that, pursuant to the AWBA, he was a public employee working for a public employer when he “reported waste or a violation of UAPB’s code of ethics or responsibilities, and was terminated in retaliation for his report and participation in a protected activity.” Finally, he states that he “participated in [an] investigation, hearing, court proceeding, legislative or other inquiry, or in any form of administrative review and was terminated because hé refused to lie.” Butler alleges that as a direct and proximate cause of UAPB’s[3] adverse action, he has suffered wage loss and seeks all remedies available to him under the AWBA, including reinstatement, fringe benefits, and retirement credits. Appellants filed a motion to dismiss the third amended complaint as being barred by the doctrine of sovereign immunity on the grounds that (1) it is an action against the State of Arkansas, -and article 5, § 20 of the Arkansas Constitution expressly prohibits the General Assembly from waiving the State’s sovereign immunity from suit in her own courts; and (2) it fails to state a claim that would permit suit against a state official. The circuit court denied the motion without explanation, and this timely appeal followed. |fiBefore reaching the merits, we address the concerns raised by the dissenting justices that this court lacks jurisdiction to hear this interlocutory appeal because the trial court failed to specifically rule on sovereign immunity. Those concerns are misplaced because the sole issue in the motion to dismiss was sovereign immunity, and -the trial court’s order operates as a ruling on that issue. This case is thus distinguishable from Arkansas Lottery Commission v. Alpha Marketing, 2012 Ark. 23, 386 S.W.3d 400, in which the Arkansas Lottery Commission moved for dismissal on multiple grounds, only one of which was based on the defense of sovereign immunity, and the trial court entered a detailed order but did not specifically rule on sovereign immunity. Under those circumstances, this court held that we did not acquire jurisdiction and dismissed the appeal without prejudice, so that the Commission could return to circuit court to obtain a ruling for this court to review. Here, we have a ruling on the issue of sovereign immunity and it is appropriate to address the merits of the appeal See also Ark. Dep’t of Human Servs. v. Fort Smith Sch. Dist., 2015 Ark. 81, 455 S.W.3d 294. In reviewing a circuit court’s decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. Ark. State Claims Comm’n v. Duit Constr. Co., 2014 Ark. 432, 445 S.W.3d 496. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must' be resolved in favor of the complaint, and the pleadings are to be liberally construed. Id. However, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. Id. |fiOn appeal, appellants argue that the circuit court erred in denying the motion to dismiss Butler’s AWBA law suit because it is barred by sovereign immunity. For their first subpoint, appellants contend that the General Assembly has no legal authority to waive the State’s sovereign immunity set out in article 5, § 20 of the Arkansas Constitution. They cite cases such as Arkansas State Highway Commission v. Nelson Brothers, 191 Ark. 629, 87 S.W.2d 394 (1935) (“It is our settled conviction that the state cannot give its consent to the maintenance of an action against it”; overruling Arkansas State Highway Comm’n v. Dodge, 186 Ark. 640, 55 S.W.2d 71 (1932)), and Fairbanks v. Sheffield, 226 Ark. 703, 706, 292 S.W.2d 82, 84 (1956) (Article 5, § 20 is mandatory and cannot be waived by the General Assembly.). Appellants contend that more recent cases recognizing an exception to sovereign immunity when it has been waived by the General Assembly are contrary to the express dictates of article 5; § 20. E.g., Ark. Dep’t of Fin. & Admin. v. Staton, 325 Ark. 341, 942 S.W.2d 804 (1996); Ark. Dep’t of Fin. & Admin. v. Tedder, 326 Ark. 495, 932 S.W.2d 755 (1996); Short v. Westark Cmty. Coll., 347 Ark. 497, 504, 65 S.W.3d 440, 445 (2002); Arkansas Dep’t of Cmty. Correction v. City of Pine Bluff, 2013 Ark. 36, 425 S.W.3d 731. As set out below, our disposition of this case makes it unnecessary to reach this argument. Next, appellants argue that Butler’s complaint does not state a factual basis for any equitable exception to sovereign immunity. One exception.to the doctrine of sovereign immunity is that equity has jurisdiction to enjoin or restrain State officials or agencies from acts which are ultra vires, in bad faith, or arbitrary and capricious. See Arkansas Tech Univ. v. Link, 341 Ark. 495, 503, 17 S.W.3d 809, 814 (2000). No such allegations are contained in the third amended complaint, and Butler’s response admits as much by focusing solely onjjthe AWBA. Appellants further argue that even if it were possible for the AWBA to waive the State’s sovereign immunity, Butler, fails to state a claim under its provisions. We agree. The AWBA prohibits retaliation as follows: (a)(1) A public employer shall not take adverse action against a public employee because the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority: (A) The existence of waste of public funds, property, or manpower, including federal funds, property, or manpower administered or controlled by a public employer; or (B) A violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state. (2) The communication shall be made at a time and in a manner which gives the public employer reasonable notice of need to correct the waste or violation. (b)(1) For purposes of subsection (a) of this section, a public employee communicates in good faith if there is a reasonable basis in fact for the communication of the existence of waste or of a violation. (2) Good faith is lacking when the public employee does not have personal knowledge of a factual basis for the communication or when the public employee knew or reasonably should have known that the communication of the waste or of the violation was malicious, false, or frivolous. ■ (c) A public employer shall not take an adverse action against a public employee because the employee participates or gives information in an investigation, hearing, court proceeding, legislative or other, inquiry, or in any form of administrative review. (d) A public employer shall not take an adverse action against a public employee because an employee has objected to or .refused to carry out a directive that the employee reasonably believes violates a ■law or a rule or -regulation adopted under the authority of laws of the state or a political subdivision of the state. (e) A public employer shall not take an adverse action against a public employee because of a report of a loss of public funds under § 25-1-124. . Ark.Code Ann. § 21-1-603 (Repl.2004)’ We turn now to the- issue before us in.this interlocutory appeal: sovereign immunity. Sovereign . immunity for the State of Arkansas arises from express constitutional declaration. Grine v. Bd. of Tr., 338 Ark. 791, 796, 2 S.W.3d 54, 58 (1999). Article 5, section 20 of the Arkansas Constitution provides that “[t]he State of Arkansas shall never be made defendant | ¡¡in any of her courts.”[4] Sovereign immunity is jurisdictional immunity from suit, and jurisdiction. must be determined entirely from the pleadings. Ark. Tech Univ. v. Link, 341 Ark. 495, 501, 17 S.W.3d 809, 812 (2000). In Smith v. Daniel, 2014 Ark. 519, 452 S.W.3d 575, this court held that when the legislature authorized a cause of action against a “public employer” in the AWBA, it expressly waived sovereign immunity. Here, the only basis alleged for surmounting the State’s sovereign immunity was that “[tjhe state of Arkansas has waived its sovereign immunity for actions arising under the. [AWBA].” For purposes of a motion to dismiss, we treat only, the facts alleged in a complaint as true but not a party’s theories, speculation, or statutory interpretation. Ark. State Claims Comm’n v. Duit Constr. Co., 2014 Ark. 432, at 8, 445 S.W.3d 496, 503. Here, Butler’s complaint does not identify any conduct attributable to either Johnson or the Board that violates the AWBA. While he makes the conclusory statement that he was terminated for reporting waste or a violation of UAPB’s code of ethics, it is unclear what, if anything, he actually reported. Furthermore, it is unclear what he refused to lie about or that he was terminated because he refused to lie. Viewing the third amended complaint in the light most favorable to Butler, he has failed to state facts that would entitle him to relief under the AWBA and that would constitute a waiver of sovereign immunity under that statute. |3In his response brief, Butler cites Crawford County v. Jones, 365 Ark. 585, 232 S.W.3d 433 (2006). In Jones, this court reversed the grant of a directed verdict on the plaintiffs AWBA claim; the issue for this court to resolve was whether Jones’s actions of reporting alleged misdeeds to quorum court members constituted reporting to the “appropriate authorities.” This court answered that question in the affirmative and held that the evidence in that case created a fact question for the jury. That case is readily distinguishable in that, at the directed-verdict stage, there had been evidence presented that created a fact question under the AWBA. We hold that the circuit court erred in denying appellants’ motion to dismiss under Rule 12(b)(6) because Butler has failed to state a claim under the AWBA; therefore, no exception to sovereign immunity exists and this suit is barred by the doctrine of sovereign immunity as set forth in Article 5, section 20, of the Arkansas Constitution. Because Butler has failed to state a claim sufficient to establish an exception to sovereign immunity under the AWBA, we need not reach the issue of whether the General Assembly can waive the State’s sovereign immunity. Reversed and dismissed. Special Justice R. Margaret Dobson concurs. Danielson and Hart, JJ., and Special Justice Robert L. Jones III dissent. Brill, C.J., and Goodson, J., not participating. . The complaint does not state what Calvin Johnson's official capacity is or allege any -facts specifically against Johnson. . Butler first filed a complaint in the Jefferson County Circuit Court in August 2012. That court transferred the case to the Pulaski County Circuit Court pursuant to Arkansas Code Annotated section 16~106-101(d). Pertinent to this appeal, the circuit court on June 10, 2013, granted the University’s motion to dismiss under Rule 12(b)(6) on the basis that the facts alleged' in the complaint did not ■ meet the elements for a violation of the AWBA; the order.stated that the motion to dismiss based on sovereign immunity was denied. Butler filed an amended complaint, the University filed a second motion , to dismiss, and Butler responded that he "had no further facts that he can allege other than what is in the complaint.” He stated that the amendment to the complaint "merely corrected] typographical errors and clarifiefd] the nature of the audit." In March 2015, appellants filed a motion for judgment on the pleadings, expressly seeking a specific ruling regarding appellants’ sovereign immunity. Butler filed a response and a third amended complaint. Appellants filed a motion to dismiss the third amended complaint, as detailed above. . The third amended complaint erroneously refers to UAMS in'two places. . This court has stated that a suit against a ' state official in his or her official capacity is . not a suit against that person; rather it is a suit against that official’s office. Ark. Tech Univ., 341 Ark. at 502, 17 S.W.3d at 813. Also, á suit against the board of trustees of a state university is a suit against the State. Id.