ROBIN F. WYNNE, Associate Justice
This is an interlocutory appeal from the Pulaski County Circuit Court's order entering a preliminary injunction in favor of the plaintiff-appellee, Barry Haas, in his challenge to Act 633 of 2017, which concerns "verification of voter registration." On appeal, appellant Mark Martin[1] argues that appellee did not show a likelihood of success on the merits because Act 633 comports with the requirements in Amendment 51 to the Arkansas Constitution for its amendment; there was insufficient showing of harm; injunctive relief is barred by sovereign immunity; and appellee lacks standing. Separate appellants, Commissioners of the Arkansas State Board of Election Commissioners,[2] argue *512 that Act 633 is germane to, and consistent with, the original purpose of Amendment 51; Act 633 does not introduce an additional qualification to vote in violation of article 3, section 1; Act 633 does not impair the right to vote in violation of article 3, section 2; the circuit court erred in concluding that appellee showed irreparable harm; and the preliminary injunction is overbroad. This court has jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(1) (2017) (appeals involving the interpretation or construction of the Constitution of Arkansas) and (a)(4) (appeals pertaining to elections and election procedures). We reverse and remand for further proceedings consistent with this opinion.
In Martin v. Kohls , 2014 Ark. 427, 444 S.W.3d 844, this court held that Act 595 of 2013, which required voters to show proof of identity in the form of a photo identification, was facially unconstitutional because it imposed an additional requirement to vote that "falls outside the ambit of article 3, section 1, of the Arkansas Constitution." Martin , 2014 Ark. 427, at 15, 444 S.W.3d at 852-53. Article 3, section 1 of the Arkansas Constitution provides as follows:
Except as otherwise provided by this Constitution, any person may vote in an election in this state who is:
(1) A citizen of the United States;
(2) A resident of the State of Arkansas;
(3) At least eighteen (18) years of age; and
(4) Lawfully registered to vote in the election. [As amended by Const. Amend. 85.]
Ark. Const. art. 3, § 1. Three justices concurred on the basis that it was unnecessary to reach the holding of the majority because Act 595 failed to obtain a two-thirds majority vote in both houses of the General Assembly as required by amendment 51, section 19. Id. at 17, 444 S.W.3d at 853 (Goodson, J., concurring).
Following this court's ruling in Martin v. Kohls , the General Assembly passed Act 633 of 2017, which amends sections 6 and 13 of Amendment 51 and related statutes. Act of March 24, 2017, No. 633, 2017 Ark. Acts 3068. We provide a brief overview of Act 633 here. Titled "AN ACT TO REQUIRE THAT A VOTER PROVIDE VERIFICATION OF VOTER REGISTRATION WHEN VOTING; TO AMEND AMENDMENT 51 OF THE ARKANSAS CONSTITUTION; AND FOR OTHER PURPOSES," Act 633 requires Arkansas voters to provide verification of voter registration in the form of a document or identification card that shows the person's name and photograph, is issued by the federal or state government or an accredited postsecondary educational institution in Arkansas, and if displaying an expiration date, is no more than four years expired ("compliant identification").[3] Id. § 2, 2017 Ark. Acts at 3069 (amending § 13 of amendment 51 to add subsection (b)(1)(A)(i) ). An in-person voter who does not present to the election official compliant identification may cast a provisional *513 ballot, not a regular ballot. Act 633 provides two ways for a person seeking to vote without a compliant form of identification to have his or her provisional ballot counted. One way is to complete a sworn statement at the polling site, under penalty of perjury, stating that the voter is registered to vote in this state and that he or she is the person registered to vote (the "voter identity affirmation"). (Section 2, amending § 13 to add subdivision (b)(4) ). Another way to have one's provisional ballot counted is to present a compliant form of identification to the county board of election commissioners or the county clerk by 12:00 noon on the Monday following the election. Id. § 2, 2017 Ark. Acts at 3072-73. If the voter identity affirmation is signed or if the voter later presents compliant identification as outlined above, the provisional ballot shall be counted if the county board of election commissioners "does not determine that the provisional ballot is invalid and should not be counted based on other grounds." Id. § 2, 2017 Ark. Acts at 3073.
A person voting by absentee ballot must enclose a copy of a compliant identification in order to have his or her ballot counted as a regular ballot.[4] (Section 2, amending § 13 to add subdivision (b)(3) ). If a copy of the identification is not included, the ballot shall be considered a provisional ballot and will be counted under essentially the same terms as an in-person voter without identification (completing voter-identity affirmation or providing a copy of a compliant identification by noon on the Monday after the election). A resident of a long-term care or residential-care facility licensed by the state is not required to present compliant identification when voting in-person or by absentee ballot but shall instead provide documentation from the administrator of the facility attesting that the person is a resident of the facility. Section 2, 2017 Ark. Acts at 3071 (amending § 13 to add subdivisions (b)(2)(B), (b)(3)(B)(iii) ). Finally, we note that all voters who do not present a compliant identification are subject to the possibility of a referral by the county board of election commissioners to the prosecuting attorney for investigation of possible voter fraud. The county board of election commissioners shall refer suspected instances of voter fraud to the prosecuting attorney. In addition to the amendments to sections 6 and 13 of Amendment 51, Act 633 amends various sections of the Arkansas Code to include the verification of voter registration requirements.
On February 7, 2018, appellee filed a complaint pursuant to the Arkansas Declaratory Judgment Act, Arkansas Code Annotated §§ 16-111-101 et seq., asking the circuit court to declare Act 633 of 2017 unconstitutional and to enjoin its enforcement. Specifically, his complaint contains the following three counts: (1) Act 633 violates section 19 of Amendment 51 to the Arkansas Constitution because it is not germane to the amendment and is not consistent with its policy and purposes; (2) Act 633 violates article 3, section 1 of the Arkansas Constitution because it imposes an additional qualification for voting; and (3) Act 633 violates article 3, section 2 of the Arkansas Constitution because it constitutes an impairment on qualified voters' ability to cast valid ballots. Pursuant to Arkansas Rule of Civil Procedure 65, appellee also filed a motion for preliminary injunction seeking to prohibit the enforcement *514 of Act 633 during the 2018 statewide preferential primary and general elections. Appellants filed responses to the motion for preliminary injunction, and the circuit court held an evidentiary hearing on March 12, 2018.[5]
On April 26, 2018, the circuit court entered a preliminary-injunction order prohibiting and enjoining appellants from enforcing the requirements of Act 633 or the rules of the Arkansas State Board of Election Commissioners that address Act 633. On April 27, 2018, both Secretary of State Mark Martin and the Commissioners filed separate notices of appeal. On May 2, 2018, this court granted a stay of the circuit court's preliminary injunction ahead of the May preferential-primary election.
In determining whether to issue a preliminary-injunction order pursuant to Rule 65, the circuit court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. See Potter v. City of Tontitown , 371 Ark. 200, 206, 264 S.W.3d 473, 478 (2007). This court has described the "likelihood of success" showing as requiring a "reasonable probability of success." Custom Microsystems, Inc. v. Blake , 344 Ark. 536, 42 S.W.3d 453 (2001) ; Ark. Dep't of Human Servs. v. Ledgerwood , 2017 Ark. 308, 530 S.W.3d 336. On appeal, this court reviews the grant of a preliminary injunction under an abuse-of-discretion standard. Potter , supra ; Baptist Health v. Murphy , 365 Ark. 115, 226 S.W.3d 800 (2006). However, this court reviews a circuit court's interpretation of a constitutional provision de novo. Gatzke v. Weiss , 375 Ark. 207, 210, 289 S.W.3d 455, 458 (2008).
I. Sovereign Immunity
Martin contends that the circuit court lacked jurisdiction to grant a preliminary injunction because the defendants have sovereign immunity. He argues that injunctive relief is not available in a declaratory-judgment action, citing Cancun Cyber Cafe & Bus. Ctr., Inc. v. City of N. Little Rock , 2012 Ark. 154, 2012 WL 1223791. In that case, this court affirmed the dismissal of a complaint seeking declaratory judgment that the plaintiff's "sweepstakes promotion" was lawful and that any prosecution would be unconstitutional. The plaintiff also sought injunctive relief to prohibit any prosecution or other law-enforcement action against it. After concluding that no justiciable controversy existed and that the circuit court did not err in concluding that Cancun was not entitled to declaratory relief, this court wrote: "It follows that Cancun was not entitled to injunctive relief, which was dependent on the grant of declaratory relief." Id. at 7. That case is clearly not on point. Martin also cites the general rule that courts are without jurisdiction to enjoin state agencies from performing duties delegated to them by statute, and he asserts that appellee failed to prove any exception.
Here, appellee challenged the constitutionality of Act 633. "We view our [sovereign immunity] cases as allowing actions that are illegal, are unconstitutional or are ultra vires to be enjoined." Cammack v. Chalmers , 284 Ark. 161, 163, 680 S.W.2d 689, 689 (1984) ; see also *515 Bd. of Trustees of Univ. of Ark. v. Burcham , 2014 Ark. 61, at 4, 2014 WL 585981 ("[T]he scope of the exception to sovereign immunity for unconstitutional acts or for acts that are ultra vires, arbitrary, capricious or in bad faith, extends only to injunctive relief.").
Because appellee has asserted that Act 633 violates qualified voters' constitutional right to vote and seeks declaratory and injunctive relief, not money damages, this action is not subject to the asserted sovereign-immunity defense.
II. Standing
As another threshold matter, appellant Martin argues that appellee lacks standing to bring this lawsuit. Martin contends that because appellee has a valid driver's license but testified that he will refuse to show it at the polls or sign the voter-verification affirmation, he has not demonstrated that he suffered any actual injury, but instead relies on "wholly manufactured standing."
The general rule is that one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. Ghegan & Ghegan, Inc. v. Weiss , 338 Ark. 9, 14-15, 991 S.W.2d 536, 539 (1999). The issue of appellee's standing is settled by this court's opinion in Martin v. Kohls, supra. In Martin , this court held that the plaintiff-appellees had standing based on the fact that they were registered voters subject to the proof-of-identity requirement in Act 595. Thus, they were among the class of persons affected by Act 595. Here, appellee is a person affected by Act 633. He will be required to show compliant identification or sign the voter-verification affidavit, and the evidence presented at the hearing established that he is within the class of persons affected by the statute; therefore, he has standing to challenge the Act's constitutionality.
III. Preliminary Injunction: Likelihood of Success on the Merits
Appellants Martin and the Commissioners argue that appellee failed to show a likelihood of success on the merits because Act 633 comports with Amendment 51's requirements for amendment by the General Assembly. We begin by noting that an act of the legislature is presumed constitutional and should be so resolved unless it is clearly incompatible with the constitution, and any doubt must be resolved in favor of constitutionality. See Walden v. Hart , 243 Ark. 650, 652, 420 S.W.2d 868, 870 (1967) ; Cent. Oklahoma Pipeline, Inc. v. Hawk Field Servs., LLC , 2012 Ark. 157, at 9-10, 400 S.W.3d 701, 707-08 ("An act should be struck down only when there is a clear incompatibility between the act and the constitution."). Furthermore, public policy is for the General Assembly to establish, not the courts. McCutchen v. City of Fort Smith , 2012 Ark. 452, at 15, 425 S.W.3d 671, 681. "We are, of course, not concerned with the wisdom or policy of the legislation, as this is a question solely for the General Assembly. We may consider only the power of the General Assembly to enact the legislation." Adams v. Whittaker , 210 Ark. 298, 300, 195 S.W.2d 634, 635 (1946).
Regarding the General Assembly's power to amend Amendment 51, section 19 of the amendment provides as follows:
§ 19. Amendment.
The General Assembly may, in the same manner as required for amendment of laws initiated by the people, amend Sections 5 through 15 of this amendment, so long as such amendments are germane to this amendment, and consistent with its policy and purposes.
*516 The express policy of Amendment 51 is set out as follows:
§ 1. Statement of policy.
The purpose of this amendment is to establish a system of permanent personal registration as a means of determining that all who cast ballots in general, special and primary elections, in this State are legally qualified to vote in such elections, in accordance with the Constitution of Arkansas and the Constitution of the United States.
Amendment 7 to the Arkansas Constitution, codified at article 5, section 1, provides that laws initiated by the people may be amended through a two-thirds vote of both houses of the General Assembly. It is undisputed that Act 633 received the required two-thirds vote in the House of Representatives and the Senate. At issue then is whether Act 633 is "germane" to Amendment 51 and "consistent with its policy and purposes."
Some background is necessary. Amendment 51 was proposed by initiative petition and approved at the general election in 1964. Its short title is "Arkansas Amendment for Voter Registration without Poll Tax Payment." Ark. Const. amend. 51, § 20. Amendment 51 abolished the poll tax, and it provides a comprehensive regulatory scheme governing the registration of voters. Martin v. Kohls , 2014 Ark. 427, at 17, 444 S.W.3d at 854 (Goodson, J., concurring).
Here, the circuit court found that the provisions of Act 633 are not germane to Amendment 51 and are not consistent with Amendment 51's purpose and policy. The circuit court thoroughly set out and analyzed the voter registration process, and it found that Act 633 "imposes requirements that are not related to the system of voter registration in Amendment 51." The circuit court found that providing photo identification does not constitute a verification of voter registration, as it is the county clerk who verifies voter registration. According to the evidence at the hearing, prior to Act 633, poll workers verified a voter's registration by asking his name, date of birth, and address, and then confirming that information with the information in the poll book. The county clerk's poll book consists of only verified, legally registered voters. In the circuit court's view, "[n]othing in the requirement to produce a compliant photo identification or to complete a sworn statement each time one votes involves the actual process of registering to vote."
Appellants contend that this reading of Amendment 51 as only encompassing voter registration, and nothing else, is too narrow. For the reasons that follow, we agree.
First, we must determine whether Act 633 is germane to Amendment 51. Germane means "[r]elevant; pertinent," Black's Law Dictionary 802 (10th ed. 2014), or "having a close relationship." Webster's Third New International Dictionary of the English Language, Unabridged 951 (1993). In essence, whether an amendment is relevant, pertinent, or bears a close relationship to Amendment 51 turns on the subject matter and scope of Amendment 51. In our view, providing a system of verifying that a person attempting to cast a ballot is registered to vote is relevant and pertinent, or has a close relationship, to an amendment establishing a system of voter registration. We hold that verifying voter registration as set out in Act 633 is germane to Amendment 51.
Next, this court must decide whether Act 633 is consistent with the policy and purpose of Amendment 51. Amendment 51's stated purpose is to "establish a system of permanent personal registration as a means of determining that all who cast ballots in ... elections ... are legally qualified to vote in such *517 elections." Appellants argue that verifying voter registration is a way of determining that all who seek to vote are legally qualified to do so, which is the ultimate aim of the voter-registration system. Appellee, on the other hand, emphasizes the purpose of establishing a system of permanent personal registration, and argues that the language "as a means of determining that all who cast ballots in general, special and primary elections in this State are legally qualified to vote in such elections" modifies the requirement of "establish[ing] a system of permanent personal registration." Thus, in appellee's view, registration is the method of ensuring that all voters are qualified. This argument might be persuasive if we were viewing section 1 of Amendment 51 in isolation. However, we must look to Amendment 51 as a whole to determine its policy and purpose. Gatzke v. Weiss , 375 Ark. 207, 211, 289 S.W.3d 455, 458 (2008) ("The Arkansas Constitution must be considered as whole, and every provision must be read in light of other provisions relating to the same subject matter.").
Additionally, section 3 of Amendment 51 provides: "No person shall vote or be permitted to vote in any election unless registered in a manner provided for by this amendment." Thus, the amendment itself contemplates some enforcement mechanism, and Act 633 provides a method of ensuring that no person is permitted to vote who is not registered. Providing a method of enforcement-verification of voter identity by photo identification or by affirmation-is consistent with the policy and purpose of Amendment 51.
According to appellee, Act 633 is an attempt to re-write and enlarge the scope of Amendment 51 beyond voter registration to include day-of and post-voting qualification of registered voters. Appellee advances several arguments in favor of this position. For instance, registration ceases thirty days before each election, so according to the appellee and the circuit court, "the voter registration process is complete long before the voter appears at a voting location or casts his ballot." In addition, appellee argues that Act 633's ongoing requirement that voters present compliant identification at the time of voting runs contrary to the intent of Amendment 51 that the system of voter registration be "permanent." In appellee's view, it is impermissible for Act 633 to require voters to "resurrect the completed registration process and re-qualify as a voter each time she votes, as long as she lives." However, none of appellee's arguments are persuasive if one accepts the broader view of Amendment 51's purpose-to ensure that all who cast ballots in elections are legally qualified to vote.
Here, we consider only the General Assembly's power to enact Act 633. We cannot say that Act 633's constitutional amendment is clearly not germane to Amendment 51 and not consistent with its policy and purpose. It is therefore constitutional. Accordingly, we reverse the circuit court's preliminary injunction and remand for further proceedings consistent with this opinion. Because we hold that appellee has failed to demonstrate a likelihood of success on the merits, it is unnecessary to address the arguments regarding irreparable harm. See Manila Sch. Dist. No. 15 v. Wagner , 356 Ark. 149, 156, 148 S.W.3d 244, 248 (2004) (citing cases). Likewise, it is unnecessary to address the remaining points on appeal because Act 633 is a valid constitutional amendment.[6]
*518 The time for issuance of the mandate is shortened to seven days, and we direct that any petition for rehearing be filed within seven days from the date that this opinion is issued.
Reversed and remanded.
Kemp, C.J., and Hart, J., dissent.
I do not agree that Act 633 is "germane" to amendment 51. Section 1 of amendment 51 clearly states that "[t]he purpose of this amendment is to establish a system of permanent personal registration as a means of determining that all who cast ballots in general, special and primary elections in this State are legally qualified to vote in such elections, in accordance with the Constitution of Arkansas and the Constitution of the United States." Further, section 3 of amendment 51 states, "No person shall vote or be permitted to vote in any election unless registered in a manner provided for by this amendment." I can draw no other conclusion that while the desire to ensure that only qualified electors cast ballots was the impetus for the amendment, its only stated mechanism for achieving this worthy goal was creating a system of "registration." Requiring a voter to show a photo identification card at a polling place is simply not part of the voter registration process. Accordingly, the circuit court did not clearly err when it so reasoned.
Like the circuit court, I find it telling that "an individual registering to vote is not required to provide photo identification." Certainly the legislature could have required the presentation of a photo identification card when a person registers to vote. That would clearly be "germane" to the purposes of amendment 51. If providing photo identification were required at registration, requiring presentation of the card at the polling place would be more defensible. Asking for a photo identification card at the polling place strikes me as locking the barn door after the horse has been stolen.
Finally, the secretary of state's argument that sections 1 and 3 of amendment 51"imply" that an "enforcement mechanism" is germane to the purposes of the amendment is a leap that I cannot make. No one has suggested that an "enforcement mechanism" can be found anywhere in the text of amendment 51. Accordingly, if it is "implied," then support for that proposition must exist in the amendment 51 "penumbra." Resorting to penumbras when the text of the constitution is silent on the subject is the kind of judicial activism that I have always opposed. The end never justifies the means.
I dissent.
Kemp, C.J., joins.

Mark Martin was sued in his official capacities as Secretary of State for the State of Arkansas and as Chairman of the Arkansas State Board of Election Commissioners.

The Commissioners, named in their official capacities, are Rhonda Cole, James Harmon Smith III, Belinda Harris-Ritter (substituted as a party by order of the circuit court), Charles Roberts, Chad Pekron, and James Sharp.

Examples of compliant identification include a driver's license, a photo identification card, a concealed handgun carry license, a United States passport, an employee badge or identification document issued by an accredited postsecondary educational institution in the State of Arkansas, a U.S. military identification document, a public assistance identification card (with photo), and a voter verification card under section 7-5-324 (to be issued without payment of fee or charge to persons who do not possess another compliant form of identification under Amendment 51, § 13).See § 2, 2017 Ark. Acts at 3070 (adding to amendment 51, § 13 subsection (b)(1)(B) ).

No identification is required of active-duty members of the uniformed services of the United States or United States Merchant Marine who are absent from the country on election day because of his or her service, or the spouse or dependent of such active-duty member.

On March 29, 2018, the Secretary of State filed with this court a petition seeking an extraordinary writ requiring the circuit court to enter an order disposing of the motion for preliminary injunction "well in advance" of April 6, 2018 (the date for delivery of live absentee ballots to military and overseas voters), along with a motion to expedite. On April 4, 2018, this court granted expedited consideration but denied the petition.

Appellee's counsel conceded at oral argument that if this court found Act 633 to be constitutional, it would be unnecessary to address whether the statutory provisions included in Act 633 violate article 3, section 1 of the Arkansas Constitution.