Cite as 2021 Ark. 136

# SUPREME COURT OF ARKANSAS

**No.** CV–20–536

|  |  |
|---|---|
| ARKANSAS DEPARTMENT OF EDUCATION; JOHNNY KEY, IN HIS OFFICIAL CAPACITY AS ARKANSAS COMMISSIONER OF EDUCATION; AND DIANE ZOOK, SUSAN CHAMBERS, CHARISSE DEAN, R. BRETT WILLIAMSON, O. FITZGERALD HILL, OUIDA NEWTON, SARAH MOORE, AND KATHY MCFETRIDGE, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE ARKANSAS STATE BOARD OF EDUCATION<br>APPELLANTS<br><br>V.<br><br>AMBER BOOTH MCCOY; DON BOOTH; KATHERINE LU; EUGENE LU; AND SKYE ADAMS<br>APPELLEES | **Opinion Delivered:** June 17, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-20-2439]<br><br>HONORABLE MARY SPENCER MCGOWAN, JUDGE<br><br><br>AFFIRMED IN PART; REVERSED AND DISMISSED IN PART; AND REMANDED. |

**RHONDA K. WOOD, Associate Justice**

This is a dispute about the State of Arkansas's continued supervision and control over

the Little Rock School District ("LRSD"). The present appeal involves whether sovereign

immunity precludes this lawsuit by appellees[1] against the Arkansas Department of Education,

---

[1]The appellees are parents and grandparents who filed the original complaint: Amber McCoy, Don Booth, Katherine Lu, Eugene Lu, and Skye Adams (collectively, the "parents").

members of the Arkansas State Board of Education, and the Commissioner of Education (collectively, the "State Board"). The State Board appeals the circuit court's denial of its motion to dismiss.

The State Board presents three issues, and we resolve them as follows. First, we conclude the circuit court lacked subject-matter jurisdiction over the parents' Administrative Procedure Act ("APA") claim and reverse and dismiss as to that claim. Second, we reverse the circuit court's finding that the appellees sufficiently pled an illegal-acts or ultra vires exception to sovereign immunity under Arkansas Code Annotated section 6-15-2917(c) and dismiss those claims. Third, we hold the circuit court correctly denied sovereign immunity on the constitutional-delegation-of-authority claim because the sufficiently pled challenge to the constitutionality of a statute overcame sovereign immunity. Thus, we affirm on this claim and remand for further proceedings.

I. *Procedural Background and Relevant Facts*

In 2017, the General Assembly passed the Arkansas Educational Support and Accountability Act (AESAA), 2017 Ark. Acts 930, codified at Ark. Code Ann. §§ 6-15-2901 et seq. (Repl. 2018 & Supp. 2019). The AESAA instituted a comprehensive accountability system to assess a public-school district's student achievement and quality, including the establishment of differentiated levels of support. The support levels ranged from Level 1 (General Support) to Level 5 (Intensive Support). Ark. Code Ann. § 6-15-2913. The AESAA required the State Board to promulgate rules governing the classification of Level 5 districts. Ark. Code Ann. § 6-15-2915(a).

2

In July 2014, the State Board classified six LRSD schools as academically distressed. Ultimately, the State Board dissolved the LRSD's school board and assumed authority of the district. *See Key v. Curry*, 2015 Ark. 392, 473 S.W.3d 1. In February 2019, the Commissioner of Education adopted exit criteria for the academically distressed LRSD schools.[2] In December 2019, the State Board reconstituted the LRSD Board because the district remained at a Level 5 classification five years after the State Board had assumed authority. The State Board voted that, as long as the LRSD remained under Level 5 support, the reconstituted and newly elected LRSD Board would exercise day-to-day authority of the LRSD, subject to three limitations[3]:

1. The LRSD Board may not make any change in the superintendent without the approval of the State Board;

2. The LRSD Board may not make any manner of selection of the Personnel Policy Committee or affect its status, or recognize any employee bargaining agent without the approval of the State Board; and

3. The LRSD Board may not institute any litigation (other than routine contract litigation against vendors or contractors of the LRSD).

---

[2]The criteria included: (1) collaborative teams to regularly interact to address common issues on curriculum, assessment, instruction, and the achievement of all students; (2) awareness and monitoring of predominant instructional practices; (3) the use of clear, ongoing evaluations of teachers' pedagogical strengths and weaknesses based on multiple sources of data consistent with student achievement data; (4) curriculum and assessments that adhere to state and district standards; (5) appropriate management of fiscal, operational, and technological resources; (6) qualitative growth goals for Schools with an "F" rating; (7) qualitative ELA and math goals for schools with an "F" rating; and (8) demonstration of fiscal, operational, and human capital to support teaching and learning in an efficient and effective manner.

[3]Although the parties refer to these as "guardrails" in their pleadings, that term is absent from the State Board's official language.

Several LRSD parents and grandparents sued the Arkansas Department of Education; the Commissioner of Education, Johnny Key; and individual State Board members over the Level 5 exit criteria and the limitations. The parents challenged the State Board's continued control of the LRSD through the limitations placed on the new school board. Their complaint alleged (1) that the State Board failed to promulgate exit criteria in violation of the APA; (2) that no statute authorized restrictions on the LRSD Board after five years; and (3) that two Arkansas statutes, Ark. Code Ann. § 6-15-2916 and 6-15-2917, unlawfully delegated legislative power to the State Board without reasonable guidelines. The parents sought relief through declaratory judgment, a writ of mandamus, and an injunction. They specifically pled that the State Board's continued control of the LRSD Board through the limitations was ultra vires, arbitrary, capricious, in bad faith, and wantonly injurious.

The State Board moved to dismiss based on sovereign immunity and lack of subject-matter jurisdiction. The circuit court denied the motion to dismiss. The State Board appealed.

II. *Standard of Review*

In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Ark. Dep't of Fin. & Admin. v. Carpenter Farms Med. Grp.*, 2020 Ark. 213, at 6, 601 S.W.3d 111, 117. We focus only on the allegations in the complaint and not matters outside the complaint. *Id.* We will resolve all reasonable inferences in the complaint's favor and construe the pleadings liberally. *Id.* On appeal, we review de novo the State Board's claim that sovereign immunity bars the parents' complaint. *Id.* at 7, 601 S.W.3d at 117.

4

III. *Law and Analysis*
A. Administrative Procedure Act - Section 25-15-214

We first address the circuit court's lack of subject-matter jurisdiction under the APA. The parents' complaint alleged that under section 25-15-214 of the APA, the State Board failed to properly promulgate specific exit criteria related to the LRSD as required by Ark. Code Ann. § 6-15-2917(c)(2).[4] *See* Ark. Code Ann. § 25-15-214 (Repl. 2014). Because the circuit court lacked subject-matter jurisdiction under section 25-15-214, we reverse and dismiss their APA claim.

Subject-matter jurisdiction is a court's authority to hear and decide a particular type of case. *Ark. Dep't of Fin. & Admin. v. Naturalis Health, LLC*, 2018 Ark. 224, at 6, 549 S.W.3d 901, 906. Whether a circuit court has subject-matter jurisdiction rests on the pleadings, not the proof. *Id.* Generally, courts lack "jurisdiction to examine administrative decisions of state agencies." *Id.* That said, circuit courts do have limited review as specifically granted by certain APA provisions. *Id.*

Section 25-15-214 of the APA provides for judicial review of "rule making or adjudication if any agency shall unlawfully, unreasonably, or capriciously fail, refuse, or delay to act." The parties agree that this is a "rule making" challenge, but the State Board disputes that the parents' claim falls under section 25-15-214 because district-specific exit criteria are not APA "rules" that require promulgation. Ark. Code Ann. § 25-15-202(10). We agree.

---

[4]The parents' complaint also pleaded that the circuit court had jurisdiction under Ark. Code Ann. § 25-19-107(a), which is the Freedom of Information Act. We assume this is a typographical error as none of the factual allegations involve a violation under that Act.

The APA defines "rule" as one that applies generally rather than specifically: "[A]n agency statement of *general applicability* and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice of an agency and includes, but is not limited to, the amendment or repeal of a prior rule." Ark. Code Ann. § 25-15-202(9)(A) (emphasis added). Thus, a rule-making challenge under section 25-15-214 must challenge a rule, or the failure to act as to a rule, of general applicability.

The State Board has already promulgated rules of general applicability for exit criteria. Arkansas Code Annotated § 6-15-2917(c)(2) requires the State Board to "promulgate rules to establish the criteria by which a public school district may exit Level 5 — Intensive support." The State formally adopted the AESAA rules in 2018 and revised them in 2019. Both versions include general rules for exit criteria. The parents do not contest the existence of these exit rules, passed under section 6-15-2917(c)(2), or their validity. Rather, they argue the State Board failed to promulgate additional criteria specific to the LRSD. But this is not a proper claim under section 25-15-214.

The parents' APA claim could survive under section 25-15-214 only if they were to plead that the State Board failed to act as to a rule of general applicability. But here, they pled that the State Board failed to enact *individualized*, LRSD-specific criteria. As a result, this claim falls outside the limited parameters where a circuit court has subject-matter jurisdiction over an agency's rule-making authority. Thus, the parents' APA claim fails for lack of subject-matter jurisdiction. We reverse the circuit court's contrary ruling and dismiss this claim.

B. Sovereign Immunity

The parents' complaint also sought relief from the State's decision to place three limitations on the reconstituted LRSD Board. They asked the circuit court to declare their right to elect a local board free of any limitations and to enjoin the State Board from imposing restrictions. Do the parents' allegations state sufficient facts to surmount sovereign immunity? We hold that they do not.

Our sovereign-immunity doctrine bars suit if a judgment for the plaintiff will operate to control the action of the State or subject it to liability. *Bd. of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 5, 535 S.W.3d 616, 619. Yet we allow declaratory-judgment actions against the State if the complaint alleged illegal and unconstitutional acts in compliance with our fact-pleading rules. *See Monsanto Co. v. Ark. State Plant Bd.*, 2019 Ark. 194, at 9, 576 S.W.3d 8, 13; *Ark. Game & Fish Comm'n v. Heslep*, 2019 Ark. 226, at 6, 577 S.W.3d 1, 5. In other words, the complaint must specify facts to support the parents' allegation that the State or a State agency acted illegally or beyond its authority. *Id.*

The parents alleged that the State Board exceeded its statutory powers because Ark. Code Ann. § 6-15-2917(c)(1) required the State Board to annex, consolidate, or reconstitute the LRSD within five years and prohibited the State Board from maintaining further control beyond those three options. Yet their complaint identified no language in the AESAA that restricts the State Board from imposing such limitations.

Our constitution charges the State with the responsibility of educating its youth: "the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of

7

education." Ark. Const. art. 14, § 1. "[A]ll departments of state government [are] responsible for providing a general, suitable, and efficient system of public education." *Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 53, 91 S.W.3d 472, 484 (2002), *supplemented*, 358 Ark. 137, 189 S.W.3d 1 (2004). As a means for managing this duty, the AESAA, particularly Ark. Code Ann. § 6-15-2916 and § 6-15-2917(c)(1), gives the State Board broad authority to control districts in need of Level 5 support.

Taking the facts in the light most favorable to the parents, the parties agree that the LRSD remained at Level 5 for more than five years, and that consistent with its authority under section 6-15-2917(c)(1), the State Board reconstituted the district. The statutory scheme neither expressly prohibits the State Board from placing limitations nor requires the State Board to relinquish complete control to a Level 5 district. Rather, section 6-15-2917(c)(1) provides that, if a public school district has not shown that it meets the Level 5 exit criteria within five years, the State Board "shall . . . reconstitute" the district. *Black's Law Dictionary* defines "reconstitute" as "to form (an organization, group, etc.) again in a different way." *Black's Law Dictionary* (11th ed. 2019). Thus, reconstitution of the LRSD simply means a reorganization of the district's administration. The definition implies that the reconstituted district could be formed differently—that is, with restrictions absent from the dissolved board. If the General Assembly had intended to restrict the State Board's powers, it could have so stated. We will not read limiting language into a statute when none exists. *Fitzgiven v. Dorey*, 2013 Ark. 346, at 14, 429 S.W.3d 234, 242. Thus, we do not interpret "reconstitute" as requiring the State Board to return control to the local board without oversight.

Additionally, section 6-15-2916 describes the authority the State Board may exercise over Level 5 districts. It provides that if a district is classified as Level 5, the State Board may "remove on a temporary basis some or all of the powers and duties granted to the current public school district board of directors." Ark. Code Ann. § 6-15-2916(2)(C). The reconstituted LRSD remains in need of Level 5 support, and the parents do not plead any facts or cite any statute in the AESAA that limits the State Board's power over Level 5 districts. *See* Ark. Code Ann. § 6-15-2916(2)(C); *see also* Ark. Code Ann. § 6-15-2916(2)(K) (The State Board may "limit the powers and duties of the public school district board of directors under Arkansas Code Annotated § 6-13-620 or any other law."). This aligns with our precedent, which recognized the State Board's broad authority to deal with distressed school districts. *See Fitzgiven*, 2013 Ark. 346, at 14, 429 S.W.3d at 242.

Thus, even taking the parents' allegations as true, as we are required to do in a motion to dismiss, the parents identify no fact or statute that suggests the State Board acted illegally or ultra vires by imposing limitations on the reconstituted LRSD Board. Sovereign immunity consequently bars these claims, and we reverse and dismiss as to these claims.

C. Unconstitutional Delegation of Legislative Authority

Our inquiry does not end with our holding that the State Board did not act illegally. The parents argue alternatively that sections 6-15-2916 and -2917 are an unconstitutional delegation of legislative authority. The complaint states, "[Ark. Code Ann. §§ 6-15-2916 and -2917] are written in such a broad and vague manner, without constraints or necessary guiding language, that any actions taken beyond specifically enumerated powers are the exercise of unlawfully delegated power." The parents request relief in an order declaring

9

the statutes unconstitutional and barring the State Board from exercising an unlawfully delegated legislative power. The circuit court found that the parents' allegation that the AESAA is an unconstitutional delegation of legislative power states a claim upon which relief can be granted.

Because this claim involves a direct challenge to the constitutionality of these statutes, and because the parents seek only declaratory and injunctive relief under it, this claim surmounts a sovereign-immunity defense at the motion-to-dismiss stage. *See Ark. State Plant Bd. v. McCarty*, 2019 Ark. 214, 576 S.W.3d 473. And we decline to decide the merits of this constitutional challenge at this interlocutory stage. We therefore affirm the circuit court's denial of the motion to dismiss based on sovereign immunity as to this claim and remand.

Affirmed in part; reversed and dismissed in part; and remanded.

BAKER, WOMACK, and WEBB, JJ., concur in part and dissent in part.

**KAREN R. BAKER, Justice, concurring in part and dissenting in part**. While I concur in the result reached by the majority in Parts A and B, I dissent from the remainder of the opinion. Because of the precedent established in *Board of Trustees of the University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616, I would also reverse and dismiss as to Part C for the reasons explained below.

*Andrews* does not provide for exceptions to its broad language barring suit against the State. In *Andrews*, the court held that "never means never" and did not identify exceptions. Accordingly, despite the majority's attempt to narrow *Andrews*, the broad language of *Andrews* does not permit such suit. Pursuant to *Andrews*, McCoy's pleadings are

10

inconsequential because the State cannot be sued under any circumstances—never means never. Until *Andrews* is overruled, suit against the State is barred; therefore, I would reverse and dismiss with regard to Part C. *See Monsanto Co. v. Ark. State Plant Bd.*, 2019 Ark. 194, at 12, 576 S.W.3d 8, 15 (Baker, J., dissenting).

Accordingly, I concur in part and dissent in part.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part**. I join the Court's decision today with one exception. The majority erroneously affirms the denial of the State Board's motion to dismiss Appellees' constitutional challenge to sections 6-15-2916 and -2917. This point on appeal should be dismissed for lack of appellate jurisdiction. Setting aside the jurisdictional bar, the complaint fails to sufficiently allege an unconstitutional delegation of legislative power. The circuit court's denial of the motion to dismiss should be reversed on this point and the entire complaint dismissed.

I.

As an initial matter, the circuit court did not rule that sovereign immunity barred the constitutional challenge to the AESAA. Instead, the circuit court's order on this point was premised on its view that the complaint stated a claim upon which relief could be granted. Absent a ruling on sovereign immunity, we do not have jurisdiction to entertain this point on appeal under Arkansas Rule of Appellate Procedure–Civil 2(a)(10). *See Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, at 5–6, 386 S.W.3d 400, 403–04. This is not a case where the sole issue in the motion to dismiss was sovereign immunity. *See, e.g., Johnson v. Butler*, 2016 Ark. 253, at 5, 494 S.W.3d 412, 416. The State Board moved to dismiss the constitutional challenge on the basis that the AESAA "does not constitute an improper

delegation of legislative authority, where the Board's discretion is not unfettered and is properly guided." The circuit court's ruling, therefore, cannot be broadly read as a denial of sovereign immunity on this issue. *Id.* The proper course is to dismiss the State Board's appeal of this issue for lack of appellate jurisdiction. *See Alpha Mktg.*, 2012 Ark. 23, at 8–9, 286 S.W.3d at 405.

## II.

If we had jurisdiction over this issue, the circuit court should be reversed and the constitutional challenge dismissed. The majority's decision otherwise misapprehends our sovereign immunity caselaw. We have previously held that "the defense of sovereign immunity [is] inapplicable in a lawsuit seeking only declaratory and injunctive relief and alleging an illegal, unconstitutional, or ultra vires act." *Ark. State Plant Bd. v. McCarty*, 2019 Ark. 214, at 7–8, 576 S.W.3d 473, 477 (citing *Martin v. Haas*, 2018 Ark. 283, at 7–8, 556 S.W.3d 509, 514–15). The first requirement is undoubtedly satisfied: Appellees seek declaratory and injunctive relief. Under the second requirement, the complaint must allege "an illegal, unconstitutional, or ultra vires act." *Id.* These allegations must still comply with our fact-pleading rules. *See Monsanto Co. v. Ark. State Plant Bd.*, 2019 Ark. 194, at 9–10, 576 S.W.3d 8, 12. The complaint falls far short of meeting our fact-pleading requirement and thus failed to adequately allege an illegal, unconstitutional, or ultra vires act.

The majority's contrary conclusion is based on its view that the claim is sufficient because it "involves a direct challenge to the constitutionality of" the statutes. This may be true in "notice pleading" jurisdictions, which simply require that a complaint provide fair notice of "what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). But as this Court has reiterated numerous times, Arkansas is not a "notice pleading" jurisdiction. *See McKinney v. City of El Dorado*, 308 Ark. 284, 287, 824 S.W.2d 826, 828 (1992). Instead, our rules impose a more stringent "fact pleading" requirement, which demands a statement of facts showing that the pleader is entitled to relief. *Id*.

According to the complaint, sections 6-15-2916 and –2917 "fail to provide the necessary guidelines and elements for [the State Board] to create exit criteria for the [Little Rock School] District." The complaint further alleges that to the extent the statutes "would, as written, give [the State Board] the power to impose the 'guardrails' on the [Little Rock School] District, those provisions are written in such a broad and vague manner, without constraints or necessary guiding language, that any actions taken beyond specifically enumerated powers are the exercise of unlawfully delegated power." Such sweeping conclusions of law, without more, do not meet our fact-pleading requirement.

There are no factual allegations within the complaint identifying how the challenged statutes fail to provide guidelines and elements for the creation of exit criteria for the Little Rock School District. Indeed, the only factual allegations regarding exit criteria involve Appellees' erroneous assertion that district-specific criteria are subject to the rulemaking procedure within the Administrative Procedure Act. Similarly, the complaint fails to identify any facts showing that the "guardrails" exceed the "specifically enumerated powers" within sections 6-15-2916 and –2917. It further fails to explain how the statutes fail to provide "constraints or necessary guiding language" that would render the provisions unconstitutional. As a result, the constitutional challenge was not adequately pled under our

13

fact-pleading standard. For that reason, we should reverse the circuit court on this point and dismiss the complaint in its entirety.

**BARBARA W. WEBB, Justice, concurring in part and dissenting in part**. The majority misapplies our standard in reviewing the granting of a Rule 12(b)(6) motion by delving into an exercise in semantics to defeat the ultimate issue brought by the parents' lawsuit. The majority fixes its gaze upon whether the parents are challenging general or specific rules of an agency and then brush aside their lawsuit because it concludes they are challenging a specific rule and not a general one. A closer inspection of the case before us shows that the parents pled in their complaint that there are no exit-criteria rules for a district placed in Level 5-Intensive support and that such rules are required by the statute. The parents also pled that the state board cannot statutorily keep the LRSD in Level 5 for more than five years.

We are to construe pleadings liberally so as to do substantial justice. Ark. R. Civ. P. 8(f). In a Rule 12(b)(6) challenge, we assume the allegations in the complaint are true and treat them in the light most favorable to the party who filed the pleading. *Perrodin v. Rooker*, 322 Ark. 117, 120, 908 S.W.2d 85, 87 (1995) (citing *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994)). In their complaint, the parents pled the following facts: there are no Administrative Procedure Act (APA) rules related to exit criteria for a Level 5 school; no APA rules for exit criteria for the LRSD; Ark. Code Ann. § 6-15-2917(c)(2) requires that the state board promulgate exit-criteria rules pursuant to the APA; the state board refuses to promulgate APA rules; the state board made exit rules unilaterally in violation of the APA; and the state board failed to comply with the Arkansas Educational Support and

14

Accountability Act (AESAA) and Arkansas law by leaving the LRSD at Level 5—Intensive Support for more than five years. We must apply these facts as true to the cause of action, or the relief sought, by the parents.

For the violations of the APA and the offenses on the educational liberties to them and their children, the parents sought the following relief in their complaint:

¶ 73.    A court order requiring the State to immediately comply with the APA and Ark. Code Ann. § 6-15-2917(c);

¶ 78.    A declaratory judgment that declared the parents the right to an elected District School Board free of "guardrails" and a District not subject to improperly promulgated "exit criteria";

¶ 82.    A writ of mandamus to compel the State to comply with the five-year deadline in Ark. Code Ann. § 6-15-2917(c);

¶ 95.    A finding that the actions of the State Board in imposing "guardrails" that went beyond the five-year period is "unlawfully delegated power"; and, finally,

¶ 96.    The parents requested an injunction against future State Board action.

In a Rule 12(b)(6) setting, we should be combining and comparing these two premises of legal reasoning—facts to the causes of action—to determine whether the factual allegations, if true, would entitle the pleader to relief. *Perrodin*, 322 Ark. at 120, 908 S.W.2d at 87 (citing Ark. R. Civ. P. 8, 12(b)(6); *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993)). We are not supposed to delve into any matter external to the complaint, such as whether the pleader can prove these facts or whether the defendant has a meritorious defense that will trounce the complaint at trial. *Guthrie v. Tyson Foods, Inc.*, 285 Ark. 95, 96, 685 S.W.2d 164, 165 (1985).

15

A complaint is not subject to dismissal for failure to state facts upon which relief could be granted if any one of the allegations would support a theory in the court where the action was commenced. *Stobaugh v. Twin City Bank*, 299 Ark. 117, 121, 771 S.W.2d 282, 284 (1989) (citing *Williams v. J.W. Black Lumber Co.*, 275 Ark. 144, 628 S.W.2d 13 (1982)). When I test the facts to the relief sought, the parents allege that the state board (a division of the executive branch) is not following statutory mandates from the legislature, has failed to make proper rules, is acting ultra vires and unilaterally, and the judiciary should make the state board comply through mandamus, a declaratory judgment, and an injunction. These facts and causes of action are properly pled factual claims for relief.

Whether the rules governing the AESAA have the exit-criteria rules should not be a factor because it does not test the pleading sufficiency of the parents' complaint. To the extent further inspection of the AESAA Rules would be necessary, the parents would still state a claim. The parents acknowledge the AESAA Rules in their briefs and count them as of no moment. They are right to do so because there are *no* rules for exit criteria—none whatsoever—in the AESAA Rules.

Instead, the AESAA Rules state that the education department shall develop a "district improvement/exit plan for each district classified as in need of level 5-intensive support." AESAA R. 005-19-348 § 8.01. Nowhere in the AESAA Rules, or anywhere else that any party has cited, are there rules, be them general or specific, "to establish the criteria by which a public school district may exit Level 5—Intensive support." Ark. Code Ann. § 6-15-2917(c)(2). Also, nowhere in the statute or the AESAA Rules is the state board permitted to put "guardrails" on a school district or maintain Level 5 control over the district

16

for more than five years. Instead, it can only reduce the Level 5 school district to Level 4 management. AESAA R. § 8.10.4.

The absence of the APA-promulgated exit-criteria rules and the factual allegation that the commissioner is simply making up the exit-criteria rules for the termination of Level 5—Intensive Support directly offends, and is contrary to, the plain mandate of Ark. Code Ann. § 6-15-2917(c)(2). This is the heart of the parents' lawsuit, and it does not hinge on whether the parents are challenging general or specific APA-approved rules because the parents are challenging the absence of any APA rules, the refusal of the board to promulgate them as required by Ark. Code Ann. § 6-15-2917(c), and the continued Level 5 designation for more than five years. This court need not delve into the merits of semantics about whether the challenged rules are general or specific because there are no valid rules. This is plainly and factually pled, and simple relief is sought in the parents' complaint.

We should next see that declaratory judgments are permitted in this kind of case and that sovereign immunity does not apply. *Monsanto Co. v. Ark. State Plant Bd.*, 2019 Ark. 194, at 9, 576 S.W.3d 8, 13; *Ark. Game & Fish Comm'n v. Heslep*, 2019 Ark. 226, at 6, 577 S.W.3d 1, 5. The parents alleged facts that the state board is acting illegally and unconstitutionally by failing to make APA rules, making rules outside the APA, continuing Level 5—Intensive Support for more than five years, and whether the state board is exercising an unlawful delegation of power from the legislature. These facts are present and pled and preclude sovereign immunity because they allege that the State is acting illegally and beyond its authority.

I concur with the majority's opinion that the unconstitutional delegation of legislative authority claim survives a sovereign immunity defense at this state of the litigation. However, I would affirm on all points on appeal, and because the majority holds otherwise by making an unnecessary distinction related to the parents' ability to challenge general and specific rules that do not even exist, I respectfully dissent.

*Leslie Rutledge*, Att'y Gen., by: *Kat Guest*, Ass't Att'y Gen., for appellants.

*Noland Law Firm, P.A.*, by: *Ross Noland*, for appellees.