Cite as 2023 Ark. App. 26

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-21-628

| | |
|---|---|
| REBECCA DAYBERRY, INDIVIDUALLY AND AS NEXT FRIEND OF MINOR CHILD<br>APPELLANT<br><br>V.<br><br>RHONDA MICHELLE PAYNE<br>APPELLEE | **Opinion Delivered** February 1, 2023<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-20-2058]<br><br>HONORABLE DOUG MARTIN, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Does our Good Samaritan Law, Ark. Code Ann. § 17-95-101 (Repl. 2018), provide immunity from civil damages for acts or omissions of ordinary negligence resulting from rendering emergency assistance or aid in good faith at an accident scene, in a suit by a third party (Dayberry) to the accident who alleges injuries resulting from a Samaritan's (Payne's) aid? Yes, it does. The circuit court's grant of immunity to Payne is therefore affirmed.

### I. *Background*

Rhonda Michelle Payne was driving in Washington County along interstate I-49 on a clear afternoon in May 2018 when a motorcyclist directly in front of her lost control and crashed into a concrete culvert in the median. Payne could tell that if the motorcyclist was injured, the injuries could be serious. She pulled off I-49, partly into the

median, without her hazard lights on, to perform CPR.[1]  The rider died despite Payne's attempts to render emergency aid.

Rebecca Dayberry was driving I-49 in the same direction in the inside lane with her daughter in the car.  She collided with Payne's parked vehicle.  Both Dayberry and her daughter were injured.

Dayberry filed suit in September 2020.  She alleged she had been injured through Payne's negligence.  Payne moved for summary judgment, citing Ark. Code Ann. § 17-95-101(b) and attaching an affidavit that described her attempt to render aid.  Dayberry conceded Payne had acted in good faith, one requirement for immunity. *Id.* § 17-95-101(b)(2). She had not pleaded that Payne acted with gross negligence, which might foreclose immunity despite good faith.

Rather, Dayberry argued the Good Samaritan Law does not apply because Payne's negligence was in parking her car—before she had begun rendering aid—and the negligence injured a third party, not the person Payne was aiding.  Payne responded with arguments from the text and history of our Good Samaritan Law.  Both parties cited opinions interpreting Good Samaritan Laws in other states.  After a hearing where both parties appeared remotely, the circuit court granted summary judgment.  Because this is an issue of first impression in an Arkansas appellate court, we reproduce the court's entire judgment:

---

[1]The parties once disputed whether Payne had pulled off fully or only partly into the median and whether she had turned on her hazard lights. Payne conceded to Dayberry's version of the facts at the summary-judgment hearing.

2

Comes now this [30th] day of [September], 2021, Defendant's, Rhonda Michelle Payne, Motion for Summary Judgment, and the Court, being duly and sufficiently advised of the facts and circumstances surrounding same, having reviewed the pleadings filed by both parties and heard oral arguments from their counsel, hereby finds the accident giving rise to Plaintiff's claim arose from Defendant's rendering of emergency assistance or service to an injured party and, thus, falls within the immunity from civil liability afforded by Arkansas' Good Samaritan statute, codified at Ark. Code Ann. § 17-95-101(b). More specifically, the Court finds the parking of Defendant's vehicle a part of her rendering of aid to the injured party, as she would not have done so but to render such aid. Defendant's acts do not fall within either of the two exceptions, failure to act in good faith and acting with gross negligence or willful misconduct, to such civil liability immunity. The statute is neither vague nor ambiguous, and clearly provides civil liability immunity for any act resulting, falling outside the two exceptions listed above, from the rendering of emergency assistance or service, without limitation thereon to claims of the individual the Good Samaritan is attempting to assist and to the exclusion of claims of third parties which the Legislature could have done, should it seen fit to do so. To rule otherwise, this Court would have to read words into the statute which are not there, which this Court cannot do. Plaintiff concedes Defendant's acts were done in good faith. There has been no allegation Defendant acted with gross negligence or willful misconduct. By Defendant's concession of the only two alleged facts in dispute, for purposes of a decision on the Motion for Summary Judgment only, there are no genuine issues of material fact in dispute. As such, the Court grants Defendant's Motion for Summary Judgment, finding Arkansas' Good Samaritan statute affords civil liability immunity to Defendant for Plaintiff's claims against her and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

Dayberry filed a timely appeal. She argues here that the circuit court erred by concluding that (1) immunity under the Good Samaritan Law applies in third-party actions, and (2) Payne's "rendering of emergency assistance or services" included pulling onto the median so that Payne is immune from an action for parking negligently.

3

## II. *Standard of Review*

Summary judgment is appropriate only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Martin v. Smith*, 2019 Ark. 232, 576 S.W.3d 32. We determine if summary judgment was appropriate by reviewing the evidentiary items presented by the moving party and determining whether a material question of fact exists. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* A summary judgment based on an immunity, where the material facts are not disputed, presents a question of law we review de novo. *Steve's Auto Ctr. of Conway, Inc. v. Ark. State Police*, 2020 Ark. 58, 592 S.W.3d 695.

## III. *The Good Samaritan Law*

The Good Samaritan Law reads as follows:

(a) Any healthcare professional under the laws of the State of Arkansas who in good faith lends emergency care or assistance without compensation at the place of an emergency or accident shall not be liable for any civil damages for acts or omissions performed in good faith so long as any act or omission resulting from the rendering of emergency assistance or services was not grossly negligent or willful misconduct.

(b) Any person who is not a healthcare professional who is present at an emergency or accident scene and who:

(1) Believes that the life, health, and safety of an injured person or a person who is under imminent threat of danger could be aided by reasonable and accessible emergency procedures under the circumstances existing at the scene thereof; and

(2) Proceeds to lend emergency assistance or service in a manner calculated in good faith to lessen or remove the immediate threat to the life, health, or safety of such a person, shall not be held liable in civil damages in

4

any action in this state for any act or omission resulting from the rendering of emergency assistance or services unless the act or omission was not in good faith and was the result of gross negligence or willful misconduct.

(c) No healthcare professional who in good faith and without compensation renders voluntary emergency assistance to a participant in a school athletic event or contest at the site thereof or during transportation to a healthcare facility for an injury suffered in the course of the event or contest shall be liable for any civil damages as a result of any acts or omissions by that healthcare professional in rendering the emergency care. The immunity granted by this subsection shall not apply in the event of an act or omission constituting gross negligence.

(d) For the purposes of this section, "healthcare professional" means a licensed physician, chiropractic physician, dentist, optometric physician, podiatric physician, and any other licensed healthcare professional.

Ark. Code Ann. § 17-95-101.

The statute was last amended in 2007. Act 1038 of 2007. Because Dayberry argues the General Assembly could not have intended to provide immunity for third-party injuries, even if the statutory text could be read that way, we set out the 2007 amendment below, with insertions to the former version of section 17-95-101 underlined and deletions struck through:

(a) Any ~~person licensed as a physician or surgeon~~ <u>health care professional</u> under the laws of the State of Arkansas ~~or any other person,~~ who, in good faith, lends emergency care or assistance without compensation at the place of an emergency or accident, ~~and who was acting as a reasonable and prudent person would have acted under the circumstances present at the scene at the time the services were rendered,~~ shall not be liable for any civil damages for acts or omissions performed in good faith <u>as long as any act or omission resulting from the rendering of emergency assistance or services was not grossly negligent or willful misconduct.</u>

(b) Any person who is not a ~~physician, surgeon, nurse, or other person trained or skilled in the treatment of medical emergencies~~ <u>health care professional</u> who is present at an emergency or accident scene, and who:

(1) Believes that the life, health, and safety of an injured person or a person who is under imminent threat of danger could be aided by

5

reasonable and accessible emergency procedures under the circumstances existing at the scene thereof;

(2) Proceeds to lend emergency assistance or service in a manner ~~reasonably~~ calculated <u>in good faith</u> to lessen or remove the immediate threat to the life, health, or safety of such a person;

~~(3) Lends only such emergency care or assistance as a reasonable and prudent person concerned for the immediate protection of the life, health, and safety of the person for whom the services were rendered would lend under the circumstances,~~

shall not be held liable in civil damages in any action in this state for any ~~harm, injury, or death of any such person so long as the person rendering such services acted in good faith and was acting as a reasonable and prudent person would have acted under the circumstances present at the scene at the time the services were rendered~~ <u>act or omission resulting from the rendering of emergency assistance or services unless the act or omission was not in good faith and was the result of gross negligence or willful misconduct.</u>

(c) No ~~physician or surgeon~~ <u>health care professional</u> who in good faith and without compensation renders voluntary emergency ~~medical~~ assistance to a participant in a school athletic event or contest at the site thereof or during transportation to a health care facility for an injury suffered in the course of the event or contest shall be liable for any civil damages as a result of any acts or omissions by that ~~physician or surgeon~~ <u>health care professional</u> in rendering the emergency ~~medical~~ care. The immunity granted by this subsection shall not apply in the event of an act or omission constituting gross negligence.

(d) For the purposes of this section ~~and any other law of this state which takes effect on or after January 1, 1994, the term "physician" shall mean a person licensed by the Arkansas State Medical Board, the Arkansas State Board of Chiropractic Examiners, or the State Podiatry Examining Board~~ <u>"health care professional" means a licensed physician, chiropractic physician, dentist, optometric physician, podiatric physician, and any other licensed health care professional.</u>

Act 1038 of 2007.

## IV. *Discussion*

Dayberry makes two main points. First, she says immunity under section 17-95-101 does not preclude third parties from suing a good Samaritan if the third party is hurt

6

because of acts the Samaritan took when helping an injured person. A plain reading of the statute does not suggest so, she contends, because it does not mention third parties, and expressly refers to a rescuing "person" and a rescued person——specifically, an "injured person or a person who is under imminent threat of danger." *Id.* § 17-95-101(b) & (b)(1). She also argues that because statutes that limit the right to sue, or are in derogation of common law, must be strictly construed, we should not read section 17-95-101 to limit third-party liability if that intent is not plain in the text. Finally, Dayberry urges that even if the text suggested that intent, affirming the grant of immunity in this case would produce an absurd result.

Payne relies on the statutory text, particularly the General Assembly's choice to provide immunity from "*any* action" for "*any* act or omission" within its scope. *Id.* § 17-95-101(b)(2) (emphasis added by Payne). And she notes that before the 2007 amendment, the statute had expressly limited immunity to actions for "harm, injury, or death" of persons who were injured or under threat at the "emergency or accident scene." Payne argues that by removing that language, the General Assembly had therefore "specifically abandoned the very limitation" Dayberry asks us to read into the statute now.

Dayberry has not demonstrated that the circuit court erred when it granted Payne immunity from suit in tort. First, applying the immunity to third-party actions is consistent with the plain text of the current statute. Setting aside whether Payne had begun "rendering . . . aid or emergency assistance" when she parked at the accident scene, she was "present at an emergency or accident scene," and this is an "action" for "civil damages" for an "act or omission resulting from" her good-faith effort to "lessen or

7

remove the immediate threat to the life, health or safety of [an injured] person," the motorcyclist. Ark. Code Ann. § 17-95-101(b)(1)–(2). Immunity under subsection (b) appears to require an accident or emergency, a belief that emergency aid is needed, and a good-faith effort to render it. The text gives no indication immunity should be narrowed further.

Further, contrasts within the current statute support the circuit court's interpretation. The immunities in subsections (a) and (c) for a "health care professional" seem focused on medical care given by licensed, trained, and paid professionals. Both refer to "emergency care," for example, and apply if the "health care professional" acts "without compensation." Subsection (b), by contrast, does not refer to "emergency care" and seems to encompass a range of "reasonable and accessible emergency procedures under the circumstances" at an emergency scene, including to remove an immediate threat to the "safety" of a person who is not injured. *See* Ark. Code Ann. § 17-95-101(b)(1) & (2). The significance is that providing emergency medical care to an injured person ordinarily presents no risk to anyone else. The same cannot be said for every action that might be taken in good faith to eliminate an imminent safety threat, for example, in an accident or emergency.

And the case for reading the current subsection (b) to provide immunity against third-party claims, which is strong on a plain reading, becomes irresistible given the changes made by the 2007 amendment. Before that amendment, subsection (b) (like subsections (a) and (c)) assumed the Samaritan would provide "emergency care or assistance"—specifically, "only such emergency care or assistance as a reasonable and

prudent person concerned for the immediate protection of the life, health, and safety of the person for whom the services were rendered would lend under the circumstances." Ark. Code. Ann. § 17-95-101(b)(3) (Repl. 2002). One who met that criterion (and others like current subsections (b)(1) and (2)) would not be liable for damages "for any harm, injury, or death of any such person," at least if the person acted in good faith, and as "a reasonable and prudent person would have acted under the circumstances" presented. Ark. Code Ann. § 17-95-101(b) (Repl. 2002). The former subsection (b) focused expressly (and repeatedly) on care provided to a specific person. The immunity analysis asked what care a "reasonable and prudent person" would have provided and assessed the reasonableness of the care the Samaritan did provide. If that care was sufficiently limited and reasonable, the statute conferred an immunity that was expressly limited to actions for "harm, injury, or death" of that person.

In 2007, the General Assembly abandoned that limit. To the extent Dayberry argues that interpreting immunity under the Good Samaritan Law to include claims by third parties is an absurd result the General Assembly could not have meant to reach, we disagree. The General Assembly might have concluded that the benefits of encouraging citizens to render aid in accidents and emergencies was worth the risk that their good-faith acts or omissions would cause further harm. Regardless, determining public policy is the General Assembly's job, not ours. *Martin v. Haas*, 2018 Ark. 283, 556 S.W.3d 509.

Finally, we agree with the circuit court that Payne's parking in the median was an "act or omission resulting from the rendering of emergency assistance or services." Ark.

9

Code Ann. § 17-95-101(b). It is undisputed that she pulled onto the median to assist the (fatally injured) motorcyclist.

Affirmed.

THYER, J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**. I write separately to emphasize that I agree this case must be affirmed, given the particular pleadings and facts stipulated by the parties below. That is to say, I don't read this case to paint with such a broad brush as to answer the question posed by judge Harrison's initial question with an unqualified yes. For our purposes, we accept as fact that the good Samaritan stopped her car with at least a portion of the car parked in the lane of travel without her flashers on. The opinion we release today repeatedly mentions that she was parked in the median. By the parties' agreement, she was not. If they had agreed that she, in fact, was off the roadway, it would be an easy affirm—but then perhaps there would not have been a case to review; perhaps there would not have been a wreck at all.

To illustrate the significance of the distinction: what if, for some reason, Payne had parked in such a way as to block all the lanes of traffic? Would she have been immune from the innumerable and predictable wrecks she would have caused? I should hope not. Under our opinion today, one might ask, why not? The difference, which I am writing to point out, is the exclusion written into the statute for lack of good faith and gross negligence by the good Samaritan. Was parking one's car in the lane of traffic done in good faith, and did it amount to gross negligence? Neither the trial court below nor our

10

court on review can address those questions. For whatever reason, they were not advanced below.

Therefore, I concur.

*Caddell Reynolds, P.A.*, by: *Marcus A. Priest*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Michael McCarty Harrison* and *Kimberly D. Young*, for appellee.